Ammlung, Appellant, *v.* Platt.

*Michael T. McDonnell, Jr.,* with him *George C. Brady, III,* for appellant.

*Louis J. Sinatra,* with him *Arthur Levy,* and *Levy and Levy,* for appellees.

OPINION BY JACOBS, J., March 27, 1973:

This is an appeal by the plaintiff from judgment entered on an order sustaining preliminary objections in the nature of a demurrer to her amended complaint in a survival and wrongful death action and dismissing the amended complaint.

Initially, it should be noted that the plaintiff has discontinued her action against two of the original eight defendants—the City of Chester and Magistrate Irvin Lawrence. They were intentionally omitted as defendants from her amended complaint[1] and were treat-

---

[1] Both defendants are absent from the caption of the amended complaint. Identifications of both as defendants in the text of the amended complaint have been removed: the original complaint contained a paragraph describing "[t]he Defendant, CITY OF CHESTER," with respect to location and type of entity; the amended complaint does not; the original complaint referred to the "negligence of the Defendant [City of Chester], through its agents," etc.; the amended complaint does not; the original complaint listed Magistrate Lawrence among the individual "[d]efendants" employed by the city; the amended complaint nowhere labels him a defendant. In other respects, the two complaints are highly similar. It is true that on two occasions the word "defendant" is used in the amended complaint in passages taken from the original complaint, where it referred to the city; it is also true that Magistrate Lawrence is mentioned as having observed the decedent along with a defendant police sergeant, in another passage derived from the original complaint. However, these three references cannot alter the obvious implication of the affirmative deletions noted above. Furthermore, the amended complaint was drafted in response to an opinion of the lower court in which little encouragement was offered with respect to the city's liability and in which it was stated that the plaintiff had conceded the nonliability of the magistrate in oral argument. We are unable to agree with plaintiff's present counsel that his predecessor's omission of the City of Chester and Magistrate Lawrence from the amended complaint was inadvertent and confined to the caption.

50

ed as being no longer parties to the action by the lower court,[2] without objection by the remaining defendants.[3] Although, strictly speaking, a discontinuance of an action against one of several defendants should be effected under Pa. R. C. P. No. 229, with notice to all parties (see Pa. R. C. P. No. 229(b)), and although an amendment of a complaint under Pa. R. C. P. No. 1033, as occurred here, is not a proper means for the dropping of a party (see 2B R. Anderson, Pennsylvania Civil Practice §1033.10 (1969)), the pertinent requisites for discontinuance were not designed to afford protection to the plaintiff seeking discontinuance, but rather to the other parties to the action, who are not here objecting to the discontinuance; no substantial rights of the plaintiff would be affected by a disregarding of the defect of procedure.[4] Consequently, we shall not consider the plaintiff's arguments as to the liability of either the City of Chester or Magistrate Irvin Lawrence.

In an appeal from an order sustaining preliminary objections to a complaint in the nature of a demurrer, the Court must accept as true the well-pleaded facts of

[2] In sustaining preliminary objections in the nature of a demurrer to plaintiff's amended complaint, the lower court was responding to the objections of the six defendants named in the amended complaint. In its opinion regarding the complaint, the court noted that the action against Magistrate Lawrence had been "abandon[ed]" and clearly regarded the City of Chester as not being present in the case.

[3] The defendants remaining after the amended complaint was filed made preliminary objections on their own behalf to that complaint, omitting the City of Chester and the magistrate from the caption of their pleading. They did not, and do not on appeal, argue for the reintroduction of the two omitted defendants to the case.

[4] ". . . The court at every stage of [an action or proceeding to which the Pennsylvania Rules of Civil Procedure are applicable] may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa. R. C. P. No. 126.

the complaint. *Woodyatt v. Bank of Old York Road,* 408 Pa. 257, 182 A.2d 500 (1962). In her amended complaint, the plaintiff alleges the following: At about 11:00 p.m. on January 24, 1970, Russell G. Ammlung, Jr., an 18-year-old, of whose estate plaintiff is administratrix, was discovered out of doors in subfreezing weather, semi-clothed and only partly conscious. He was arrested by an officer of the Chester City Police Department, defendant Lawrence Platt, for being drunk and disorderly, in spite of the fact that he was, and appeared to be, simply ill.

Mr. Ammlung was removed to the Chester City Police Station by Officer Platt and Officers Joseph Friel and Michael Brown of the Chester Police Department, also defendants, and there confined to a cell. No medical examination was afforded him; no effort was made to ascertain his identity or to notify his relatives. He died the following morning, sometime after 10 o'clock, in his cell.

In the interim, he remained in a chilled state and without adequate clothing; he was unattended until 8:45 of the morning following his arrest. At some point, water was thrown upon, or otherwise applied to, him in an effort to revive him; the water caused him to contract pneumonia. At 8:45 of the morning following his arrest, he was observed to be still unconscious by Sergeant Paul L. Morgan of the Chester Police Department, a defendant, who heard a gurgling sound in his throat. The incident was not reported.

Shortly before his death, mucus was seen coming from his mouth. Death resulted from the "grossly negligent and wanton" treatment of the defendants, who were acting within the scope of their employment and who included Captain John Welc, in charge of the police station, and Roy Dixon, an employee of the police department in whose custody the decedent was while confined.

52

In dismissing plaintiff's amended complaint, the lower court held that the defendants named in the complaint would not be liable in the absence of "intentional, wanton, and malicious conduct"[5] and that such conduct had not been sufficiently alleged. Plaintiff has appealed.

Two issues are presented by the case: whether persons having custody by law of an incapacitated prisoner are liable for his death caused by their wanton conduct; and, if so, whether the plaintiff's amended complaint successfully pleads such conduct.

The rule that employees of the sovereign may avoid liability with respect to certain conduct which would otherwise be tortious is of long standing. *See* W. Prosser, The Law of Torts §132 (4th ed. 1971). It is designed to prevent an excess of caution, based upon considerations of personal liability or subjection to suit, from influencing a decision requiring the exercise of judgment. *Id.*[6] On balance, it is thought that the injury to the public resulting from an overcaution by officials on matters of judgment would outweigh the

---

[5] A reading of the lower court's entire opinion, as well as its previous opinion on the plaintiff's original complaint, indicates a possibility that the court had intended to state as its holding that an absence of intentional, wanton, *or* malicious conduct would preclude liability, and that no such conduct had been sufficiently alleged.

[6] Additional reasons in support of the rule include: (1) its saving of the decision-maker's time; (2) its removal of a discouragement to public service; (3) its compatibility with an independence from external control of the function of the decision-maker; (4) its fostering of a finality of decision; (5) its leaving of the regulation of misconduct to better means; and (6) its fairness in not penalizing a decision-maker whose position requires an exercise of his own judgment, by imposing liability based upon another's judgment. *See* Jennings, *Tort Liability of Administrative Officers*, 21 Minn. L. Rev. 263 (1937) (reasons among those given by author for judges' immunity). *See also Safeguard Mut. Ins. Co. v. Miller*, 333 F. Supp. 822 (E.D. Pa. 1971).

injury to private persons which would result from an absence of caution.[7] The nature of the rule as adhered to in Pennsylvania will be discussed in the paragraphs following.

With respect to at least some actions of high public officials, taken in the course of their duties or powers and within the scope of their authority, an absolute immunity from tort liability for damages exists. *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968) (township supervisors in second class township held to be "high public officials" and hence immune from tort liability for loss incurred by plaintiff in case involving reliance on supervisors' advice as to obtaining of building permit, and subsequent failure to obtain permit). *Montgomery v. Philadelphia,* 392 Pa. 178, 140 A.2d 100 (1958) ; *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952).

With respect to the actions of lower level public employees, such as the defendants in the present case,[8] a more complicated form of the immunity rule obtains. It is clear that not every type of conduct of such employees in the course of their duties is protected,[9] and that even conduct which is protected is subject upon

---

[7] *See* K. Davis, 3 Administrative Law Treatise §26.04 (1958).

[8] "It has been suggested that the determination of whether a particular public officer is protected by absolute privilege should depend upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Montgomery v. Philadelphia,* 392 Pa. 178, 186, 140 A.2d 100, 105 (1958) (applying test described). *See also Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968) (applying same test). We do not believe that the defendants in the present case can be labeled high public officials for purposes of the immunity rule.

[9] *See Meads v. Rutter,* 122 Pa. Superior Ct. 64, 184 A. 560 (1936) ; *Simonson v. Martin,* 35 Pa. D. & C.2d 1 (1963) ; *McSparran v. H. J. Williams Co.,* 249 F. Supp. 84 (E.D. Pa. 1965) (interpreting Pennsylvania law) ; *Esposito v. Emery,* 249 F. Supp. 308 (E.D. Pa. 1965) (same).

condition to loss of protection.[10] The precise type of conduct to which this branch of the rule applies and the nature of liability which attaches to even protected conduct under it, is difficult to define. The lower court noted in an opinion regarding plaintiff's original complaint that in Pennsylvania the law "[a]s to the liability of police officers for injurious acts committed in the performance of their duties . . . is not clear."

With regard to the type of conduct protected by the branch of the rule under discussion, the Pennsylvania cases have involved matters within the discretion of the defendant. Thus, a township official's decision to build a causeway,[11] a school director's dismissal of a principal,[12] a state banking secretary's disallowance of a claim,[13] and a city anti-poverty commission leader's selection of a children's camp[14] have been held to be within the purview of the rule. The distinction between discretionary[15] and so-called ministerial[16] duties, with re-

---

[10] *See Burton v. Fulton*, 49 Pa. 151 (1865) ; *Waters v. Evans*, 47 Pa. D. & C.2d 419 (1969), *aff'd per curiam*, 218 Pa. Superior Ct. 141, 279 A.2d 286 (1971).

[11] *Yealy v. Fink*, 43 Pa. 212 (1862). The official in question was a township supervisor. It will be noted that a supervisor of a second class township has recently been classified as a high public official and therefore been held absolutely immune from tort liability for damages resulting from inaccurate statements made by him in the course of his duty. *Jonnet v. Bodick*, 431 Pa. 59, 244 A.2d 751 (1968).

[12] *Burton v. Fulton*, 49 Pa. 151 (1865).

[13] *Schwinn v. Gordon*, 134 Pa. Superior Ct. 422, 3 A.2d 926 (1939).

[14] *Waters v. Evans*, 47 Pa. D. & C.2d 419 (1969), *aff'd per curiam*, 218 Pa. Superior Ct. 141, 279 A.2d 286 (1971).

[15] A discretionary duty has been defined as one "requiring personal deliberation, decision and judgment, and to be performed or not according to [the employee's] own judgment as to what is necessary and proper." 5A L. Frumer, R. Benoit, M. Friedman & L. Pilgrim, Personal Injury §1.03[2], at 172 (1967).

[16] A ministerial duty has been defined as one "which [is] absolute, certain and imperative, involving merely the execution of a set task." *Id.*, at 173-75.

spect to vulnerability to private suits, was discussed in *Amer. Pavement Co. v. Wagner*, 139 Pa. 623, 21 A. 160 (1891). Although some courts draw a further distinction between conduct which is misfeasance and nonfeasance,[17] others do not,[18] and the distinction has been criticized as unreasonable;[19] it has been rejected by a Pennsylvania court,[20] and will not be adopted here.

The care of prisoners has been cited by one writer as an example of conduct held to be ministerial,[21] and by another as an example of conduct held to be discretionary.[22] According to §320 of the Restatement (Second) of Torts, one who has custody of another is under a duty of reasonable care to protect him from injuries at the hands of third persons, within the custodian's control, to whom he has been rendered vulnerable by the custody or manner of custody.[23] The section applies to policemen and jailers, as well as to others.[24]

---

[17] *See* W. Prosser, The Law of Torts §132 (4th ed. 1971).

[18] *See* 5A L. Frumer, R. Benoit, M. Friedman & L. Pilgrim, Personal Injury §1.03[2][b] (1967).

[19] W. Prosser, The Law of Torts §132 (4th ed. 1971).

[20] *Thomas v. Osborn*, 39 Pa. D. & C.2d 472 (1966) (distinction proposed by police officer sued for failure to protect property).

[21] W. Prosser, The Law of Torts §132, at 990 (4th ed. 1971).

[22] 5A L. Frumer, R. Benoit, M. Friedman & L. Pilgrim, Personal Injury §1.03[2][a], at 178 (1967).

[23] "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and (b) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts §320.

[24] *See* Restatement (Second) of Torts §320, comment *a* (1965).

When public employees, including police officers, act beyond the scope of their authority, their actions have been held to be

With regard to the nature of liability which attaches even to conduct involving discretion, a number of Pennsylvania cases require examination. In *Yealy v. Fink,* 43 Pa. 212 (1862), the Supreme Court held that township officials acting within the scope of their authority could not be held liable for property damage resulting from their decision to build a causeway through a stream rather than a bridge over it—absent "a *malicious* design to do . . . injury, or . . . such a reckless and wanton disregard [of the property owner's interests] as would be equivalent to malicious intent." *Id.* at 218. In *Burton v. Fulton,* 49 Pa. 151 (1865), the Court exonerated school directors acting within the scope of their authority from liability for the dismissal of a school princial—absent "malice and injury . . . [as] the impelling motives." *Id.* at 155. In *Schwinn v. Gordon,* 134 Pa. Superior Ct. 422, 3 A.2d 926 (1939), this Court held that a state secretary of banking would not be liable as to a discretionary decision disallowing a certain claim—absent "corrupt or malicious motives." *Id.* at 429, 3 A.2d at 929. In *Waters v. Evans,* 47 Pa. D. & C.2d 419 (1969), *aff'd per curiam,* 218 Pa. Superior Ct. 141, 279 A.2d 286 (1971), the court held that Philadelphia Anti-Poverty Action Commission leaders would not be liable for injuries to children sent to an unaccredited and uninvestigated camp—absent "malice or intention to injure." 47 Pa. D. & C.2d 419, 421. It is obvious from these cases that the existence of malice is a prerequisite to the incurring of liability for conduct involving discretion under the form of the immunity rule in question. "Malice" is a term which has traditionally been susceptible of different meanings in different contexts; in *Yealy,* it appears to have been equat-

---

not protected by the immunity rule. *See Jenkins Sportswear v. City of Pittston,* 22 Pa. D. & C.2d 566 (1960) ; K. Davis, 3 Administrative Law Treatise §26.05 (1958).

ed with "malignant feelings . . . or . . . a wicked disregard of the interests of others." *Yealy v. Fink*, 43 Pa. 212, 217 (1862).

The law relating to tort immunity for public officers has been described as "complicated,"[25] lacking in "common sense" under certain interpretations,[26] "unclear" in part,[27] "inadequate" in part,[28] and leaving "a great deal of room for argument in particular cases."[29] In view of this state of the law, it is important to return to the basic reason for the rule, in an application of it to particular facts.[30] That purpose is to prevent overcaution, inimical to the public interest, on the part of public employees charged with the exercise of their judgment.

The plaintiff in the present case has alleged that the defendants, through wanton conduct, caused the death of an individual in their custody who was ill and incapacitated. "[W]antonness," in Pennsylvania, "exists where the danger to the [injured party], though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." *Kasanovich v. George*, 348 Pa. 199, 203, 34 A.2d 523, 525 (1943). Given this characterization of the state of mind constituting wantonness,

---

[25] W. Prosser, The Law of Torts §132, at 991 (4th ed. 1971).

[26] K. Davis, 3 Administrative Law Treatise §26.05, at 531 (1958).

[27] Jaffe, *Suits Against Governments and Officers: Damage Actions*, 77 Harv. L. Rev. 209, 218 (1963).

[28] 73 Harv. L. Rev. 600, 602 (1960).

[29] 5A L. Frumer, R. Benoit, M. Friedman & L. Pilgrim, Personal Injury §1.03[2][a], at 176 (1967).

[30] *See Ne Casek v. City of Los Angeles*, 233 Cal. App. 2d 131, 43 Cal. Rptr. 294 (1965) (determination of whether act was discretionary or ministerial said to depend upon purpose of rule granting immunity).

we do not believe that the interest of the public in eliminating caution with regard to the treatment of incapacitated prisoners is sufficiently important to justify an employee's immunity from liability for actual death[31] of such prisoners caused by his wanton conduct, whether such conduct be labeled "malicious" or not.[32]

It remains to be determined whether the plaintiff's amended complaint satisfactorily alleges wanton conduct, causing the death of an incapacitated prisoner, on the part of the defendants.

Under Pa. R. C. P. No. 1019(b), "[m]alice, intent, knowledge, and other conditions of the mind may be averred generally." Wantonness, being in principle a state of mind,[33] has been regarded as included within the rule. *See McDonald v. Gross,* 10 Mercer Co. L.J. 1 (1970); *Linebaugh v. Record Herald Publishing Co.,* 1 Adams Co. Legal J. 190 (1960) (recklessness). The permissibility of pleading a condition of the mind generally, in a fact-pleading state,[34] is, of course, founded upon necessity.[35] The allowance of such pleading was

---

[31] The character and severity of an individual's injury is an important consideration in a determination regarding the immunity of public employees. *See* Jaffe, *Suits Against Governments and Officers: Damage Actions,* 77 Harv. L. Rev. 209 (1963).

[32] We are strengthened in this view by the fact that, as noted previously in the text, the Restatement (Second) of Torts, at §320, would impose a duty of mere reasonable care upon the custodian of a prisoner in certain cases. It has been observed that "in most states police officers are . . . liable for negligent failure to provide medical aid to prisoners . . . ." Mathes & Jones, *Toward a "Scope of Official Duty" Immunity for Police Officers in Damage Actions,* 53 Geo. L.J. 889, 898 (1965).

In view of plaintiff's pleading of wantonness in the present case, it is not necessary to decide whether a pleading based upon mere negligence would have been sufficient.

[33] *See* W. Prosser, The Law of Torts §34 (4th ed. 1971).

[34] *See* 29 P.L.E. Pleading §§1, 11 (1960); Pa. R. C. P. No. 1019 (a).

[35] *See* 1 Goodrich-Amram §1019(b)-2.

not meant, however, to dispense with the requirement that material facts constituting the conduct of a defendant also be pleaded. *See* 2A R. Anderson, Pennsylvania Civil Practice §1019.42 (1969).

The plaintiff has alleged that the decedent was in the custody of the defendants, that he was ill and semi-conscious, that he was allowed to lie in that state a full night, without adequate clothing and without medical care, that he died the next morning in his cell, and that the defendants in so confining and treating him acted wantonly—i.e., with a realization of the danger he was in and with a reckless disregard of that danger. Although it may be that the amended complaint lacks sufficient specificity, and is thus susceptible to the motion for a more specific pleading included in defendants' preliminary objections,[36] we do not believe that a demurrer should have been sustained and the amended complaint dismissed. A preliminary objection in the nature of a demurrer is not to be sustained and the complaint dismissed unless "the law says with certainty that no recovery is possible [citations omitted]." *Hoffman v. Misericordia Hospital*, 439 Pa. 501, 503, 267 A.2d 867, 868 (1970). Under the facts alleged, we are not prepared to say that no recovery is possible.[37]

---

[36] *See* Pa. R. C. P. No. 1017(b)(3); 1 Goodrich-Amram §1017(b)-9.

"The . . . question under Rule 1017(b)(3) is 'whether the complaint is sufficiently clear to enable the defendant to prepare his defense,' or 'whether the plaintiff's complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense.'" 1 Goodrich-Amram §1017(b)-9 (citations omitted).

[37] In view of our disposition of this case, it is not necessary to consider the plaintiff's contention that the lower court abused its discretion in dismissing the amended complaint rather than deferring to the jurisdiction of a federal court in a related action.

Judgment reversed with a procedendo.

WRIGHT, P. J., and WATKINS, J., would affirm on the opinion of the court below.