Robert B. Wicks and Lucy J. Wicks, Individually and as Parents and Natural Guardians of Jill, Geoffrey and Audrey Wicks, Minors, Appellants *v.* Milzoco Builders, Inc.; Carroll Builders, Inc.; R. L. Sheibley and Benjamin Breneman, trading as R. L. Sheibley Construction Co.; Georgian Hall Real Estate; Monroe Township; Eugene Cook; Chester Miller; Wesley Zollers; Scott Greenfield; Kenneth Miller; Charles Baker and Merle Wertz, Appellees.

Charles J. Bauer and Ruth M. Bauer, Individually and as Parents and Natural Guardians of Ruth, Charles, John, Linda and Michelle Bauer, Minors, Appellants *v.* Milzoco Builders, Inc.; Carroll Builders, Inc.; R. L. Sheibley and Benjamin Breneman, trading as R. L. Sheibley Construction Co.; Georgian Hall Real Estate; Monroe Township; Eugene Cook; Chester Miller; Wesley Zollers; Scott Greenfield; Kenneth Miller; Charles Baker and Merle Wertz, Appellees.

Donald L. Sheriff and Pamela K. Sheriff, Individually and as Parents and Natural Guardians of Michael Sheriff, a Minor, Appellants *v.* Milzoco Builders, Inc.; Carroll Builders, Inc.; R. L. Sheibley and Benjamin Breneman, trading as R. L. Sheibley Construction Co.; Georgian Hall Real Estate; Monroe Township; Eugene Cook; Chester Miller; Wesley Zollers; Scott Greenfield; Kenneth Miller; Charles Baker and Merle Wertz, Appellees.

William E. Lello and Linda J. Lello, Appellants *v.* Milzoco Builders, Inc.; Chester Miller; Wesley Zollers; Monroe Township; Kenneth Miller; Charles Baker and Merle Wertz, Appellees.

Argued January 5, 1976, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson Jr., Mencer, Rogers and Blatt.

342

*Richard C. Angino,* with him *Hurwitz, Klein, Benjamin & Angino,* for appellants.

*Richard C. Snelbaker,* with him *Martson and Snelbaker,* for appellees, Monroe Township, Miller, Baker and Wertz.

*William C. Costopoulas, Kollas & Costopoulas, Joseph G. Skelly, Ball & Skelly, Harold S. Irwin,* and *Irwin, Irwin & Irwin,* for remaining appellees.

OPINION BY PRESIDENT JUDGE BOWMAN, July 2, 1976:

Appellants, Charles J. and Ruth M. Bauer, are residents of Monroe Township in Cumberland County, who, in 1971, purchased a newly constructed house within a development known as Monroe Acres. On or about August 1, 1974, appellants filed a complaint in the Cumberland County Court of Common Pleas.[1] Their major factual allegations recited the phenomenon and consequences of intense surface water flooding in the front and back yards of their property. Among the identified defendants were various business entities and individuals who had been involved in the construction and sale of appellants' house. In addition, Monroe Township and its three supervisors were named as defendants, specifically for their alleged failure to have enforced, as against the other named defendants, certain provisions of the Monroe Township Subdivision Ordinance.

Appellants' complaint is extremely complex, both in its allegations and in its requested forms of relief. However, we need not confront its every facet at this time. The Township and its supervisors responded jointly to appellants' complaint with preliminary objections in the nature of a demurrer. In an opinion and order filed January 21, 1975, the lower court sustained these preliminary objections and entered judgment on the pleadings in favor of Monroe Township and its supervisors.[2]

---

[1] The complaint was filed by appellants in their individual capacities and as the parents and natural guardians of their five minor children.

[2] Appellants were granted leave to amend their complaint as to the private defendants.

The essence of the lower court's adjudication and the focal point of our review lie in the Supreme Court's decision in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973). That decision unequivocally divested Pennsylvania political subdivisions of their historical protection from liability in civil actions for damages.

"We now hold that the doctrine of governmental immunity—long since devoid of any valid justification—is abolished in this Commonwealth." 453 Pa. at 587, 305 A.2d at 878. (Footnotes omitted.)

While difficult to categorize as either intentional or negligent conduct, the complaint's allegations of failure of the Township and its supervisors to have performed sundry public duties and appellants' corresponding prayer for damages resound in traditional concepts of tort law. It is doubtless that such a position would have been patently sterile prior to *Ayala*.[3] Whether and to what extent *Ayala* provides appellants with the necessary support to overcome the Township's and its supervisors' assertions of immunity are the questions now before us.

In dismissing appellants' complaint as to the Township and its supervisors, the lower court proceeded upon the assumption that governmental immunity and the absolute immunity of high public officials[4] are distinct doctrines having no substantial interrelation. Thus, reasoned the lower court, *Ayala's* abolition of governmental immunity neither expressly nor impliedly affected the absolute immunity enjoyed by high public officials of political subdivisions.

---

[3] *See, e.g., Smeltz v. Harrisburg*, 440 Pa. 224, 269 A.2d 466 (1970) ; *Dillon v. York City School District*, 422 Pa. 103, 220 A.2d 896 (1966).

[4] It has been conceded that the Township's supervisors are, in fact, "high public officials". *See Jonnet v. Bodick*, 431 Pa. 59, 244 A.2d 751 (1968).

While their origins have become somewhat blurred by the passage of time, it is apparent that the two doctrines had pursued different historical odysseys prior to the decision in *Ayala*. The English case of *Russell v. Men of Devon*, 2 T. R. 667, 100 Eng. Rep. 359 (K.B. 1788), has generally been acknowledged as the parent of governmental immunity.[5]  No such clarity of inception exists as to the absolute immunity of high public officials, although at least one court has referred to the decision in *Floyd and Barker*, 12 Coke 23 (Star Chamber 1600), as "the leading case." *See Taaffe v. Downes*, 3 Moore P.C. Rep. 36 (1813).

Governmental immunity was incorporated into the body of Pennsylvania jurisprudence at least as early as 1888 when *Ford v. Kendall Borough School District*, 121 Pa. 543, 15 A. 812 (1888), was decided.  Although *Ford* offers no express citation to *Russell v. Men of Devon, supra,* as precedent, *Ford's* reliance on the identical rationales presented in *Russell* strongly suggests *Ford's* lineage from that English case.  On the other hand, the absolute immunity of high public officials did not gain recognition in our Commonwealth until 1952.[6]  *See Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892 (1952).  *Matson* traces the doctrine's genealogy directly to the federal courts[7] and thence to the English common law.  *See Taaffe v. Downes, supra; Hamon v. Howell*, 2 Mod. 218, 86 Eng. Rep. 1035 (K.B. 1685); *Floyd and Barker, supra.*

The rationales traditionally pronounced for the advent and evolution of governmental immunity have been the prevention of "an infinity of actions," the

---

[5] *See Ayala, supra.*

[6] Absolute immunity is not to be confused with the long-standing Pennsylvania doctrine of conditional immunity of officials, agents and employees of governmental entities. *See, e.g., Burton v. Fulton,* 49 Pa. 151 (1865).

[7] *See Spalding v. Vilas*, 161 U.S. 483 (1896).

absence of a fund for payment of claims successfully prosecuted against political subdivisions, and the tenet that an individual's injury should be subordinated to the public convenience. *Ayala, supra; Ford v. Kendall Borough School District, supra.* By contrast, a single reason has been repeatedly offered by all courts which have considered the absolute immunity of high public officials, namely, the preservation of independence in the decision-making processes of high judicial and executive officials. *Spalding v. Vilas, supra* note 7; *Jonnet v. Bodick, supra* note 4; *Matson v. Margiotti, supra.* While our Supreme Court summarily dispelled the continuing vitality and logic of the governmental immunity rationales, it left unmentioned the concept of "official independence". *See Ayala, supra.*

What we have then are at least three points of differentiation between the developments of the two doctrines: (1) they follow different, though perhaps parallel, historical paths through Pennsylvania and federal law (absolute immunity) and into the English common law; (2) their respective placements within the body of Pennsylvania law occurred over a 60 year interval; and (3) they were created, adopted and nurtured for different reasons. Whether or not the absolute immunity of high public officials merits continued recognition, is not for this Court to say. As a judicially created doctrine long recognized by our Supreme Court, *Jonnet v. Bodick, supra* note 4, we are bound by its holding. *Lovrinoff v. Pennsylvania Turnpike Commission,* 3 Pa. Commonwealth Ct. 161, 281 A.2d 176 (1971). We simply believe that the Supreme Court's abolition of governmental immunity in *Ayala* did not and was not intended to effect an abolition of the doctrine of absolute immunity of high public officials.

As to Monroe Township, we must disagree with the lower court's grant of its demurrer. We appreciate the lower court's difficulty in applying the doctrine of respondeat superior where the agents, whose alleged misconduct is to be imputed to the principal, are themselves immune from suit. However, we may not permit the clear holding of *Ayala* to be circumvented because the strict application of traditional agency concepts would require sustaining of the demurrer by the Township. We can only assume that the holding in *Ayala,* where the sole defendant was the Philadelphia Board of Public Education charged with responsibility because of alleged negligent conduct of its employees, and the Order of the Supreme Court in remanding the case for further proceedings, precludes strict application of respondeat superior concepts in this class of cases, at least to the extent that the servant or agent must be liable in tort to visit liability upon his employer or principal.

ORDER

Now, July 2, 1976, the order of the Court of Common Pleas of Cumberland County is reversed insofar as it granted the demurrer of Monroe Township and dismissed the complaint as to the Township. In all other respects, the order is affirmed. This case is remanded to the Court of Common Pleas of Cumberland County for further proceedings consistent with the opinion filed herewith.

---

CONCURRING AND DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

While I agree with the majority of this Court that Appellants' complaint should not have been dismissed as to Monroe Township, I disagree with its determination that high public officials of political subdivisions are absolutely immune from liability in civil actions.

Our Supreme Court has held that the basis of the *Commonwealth's* immunity is Article I, Section 11, of the Pennsylvania Constitution as distinguished from the common-law origin of the immunity of *units of local government. Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A.2d 849 (1973). *Biello* almost apologetically holds that this distinction renders the judiciary powerless to disturb the immunity doctrine as to the Commonwealth. However, in *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), the immunity doctrine was abolished as it applied to units of local government.

*Ayala* clearly emphasized the rationales underlying local governmental immunity are neither justified by experience nor required by social policy.

In rejecting the anachronistic rationales customarily employed in support of governmental immunity, *Ayala* emphasized that the redress of wrongs done to individuals by units of local government was of paramount importance. This, I believe, should be the overriding consideration whenever units of local government *or their officials* are sued in tort.

Since the constitutional mandate of Article I, Section 11, appears to me to be the only reason for our Supreme Court's refusal to abandon the sovereign immunity of the Commonwealth and its high public officials, I see no reason for this Court to ignore the policy priorities articulated in *Ayala.* Accordingly, while it may be necessary to retain *individual* immunity for high officials of the Commonwealth in order to implement the Commonwealth's *entity* immunity, I think it unnecessary to retain the individual immunity of high officials of local government when the entity immunity of units of local government has been abolished.