Ashley Coll GREENFIELD, as Administratrix of the goods, chattels and credits which were of Thomas Frank Greenfield, Deceased, Plaintiff,

v.

Peter A. VESELLA, Castle Motels, Inc., and Holiday Inns, Inc., Defendants,

v.

CLEMENT VENDING CORPORATION, Thomas G. Donald, Alfred Bellinotti, Jr., the Pennsylvania Department of Labor and Industry, Bigelow-Sanford, Inc., G & D Commercial Floor Coverings, Dill Construction Company, Rodale Manufacturing, Inc., Bruce Merrilees Company, Rockola Manufacturing Corporation, and Vendors Exchange, Third-Party Defendants.

Civ. A. No. 78–342.

United States District Court,
W. D. Pennsylvania.

Sept. 12, 1978.

Larry E. Coploff, Pittsburgh, Pa., for plaintiff.

Frederick N. Egler, Daniel F. LaCava, Thomson, Rhodes & Grigsby, William K. Herrington, Weis & Weis, Charlene R. Ehrenwerth, Asst. Atty. Gen., Dept. of Justice, James A. Mollica, Jr., James F. Manley, Arthur G. Stein, Charles Kirshner, Joseph B. Bagley, Pittsburgh, Pa., B. Patrick Costello, Greensburg, Pa., Kellen McClendon, Cosmos J. Reale, John R. McGinley, Bernard J. McAuley, Charles J. Duffy, Jr., Pittsburgh, Pa., for defendants.

---

1. *See* paragraphs 22 and 23 of the third-party complaint.

2. In an opinion filed the same day as *Mayle,* the Court emphasized that the abrogation of sover-

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

This is a diversity action for damages arising out of a fire which occurred on November 3, 1977, at the Holiday Inn, New Castle, Pennsylvania. Plaintiff's decedent, Thomas Frank Greenfield, was a business invitee at the motel and died in the blaze. The administrator instituted this civil action alleging that the fire and decedent's death were caused by the joint and several negligence of defendants. Defendant-Vesella, the owner of the establishment, filed a third-party complaint against, among others, the Pennsylvania Department of Labor and Industry (hereinafter Department of Labor) and its inspector, Alfred Bellinotti, alleging that the Department, by its agent, negligently inspected the premises prior to the fire and failed to advise Vesella of the unsafe and dangerous conditions.[1]

The Department of Labor and Bellinotti have moved to dismiss the third-party complaint on two distinct grounds: (1) The Eleventh Amendment to the Constitution bars suit in Federal Court against the Commonwealth, its agencies or officials, acting within the scope of their employment, for money damages without the consent of the sovereign; and (2) Alfred Bellinotti is protected under Pennsylvania law by the doctrine of official immunity for tortious acts within the scope of his authority.

The instant motion raises important questions concerning the scope of the recent landmark decision of the Pennsylvania Supreme Court abolishing the long-standing doctrine of sovereign immunity. *Mayle v. Pennsylvania Dept. of Highways,* 479 Pa. 384, 388 A.2d 709 (1978).[2] As it relates to the motion presently before the court, the *Mayle* holding raises two issues: (1) Does the abrogation of sovereign immunity by the highest court of the Commonwealth of Pennsylvania constitute a waiver of the im-

eign immunity applied to agencies of the Commonwealth (like the Department of Labor and Industry). *Porr v. Com. Dept. of State Police,* 479 Pa. 419, 388 A.2d 725 (1978).

munity afforded the state by the Eleventh Amendment from civil liability for money damages in federal court? (2) Does the abrogation of sovereign immunity also abolish, by inference or otherwise, the doctrine of official immunity in Pennsylvania?

## II. *Eleventh Amendment Immunity*

[1, 2] The Eleventh Amendment to the Constitution reads as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In the absence of a clear and express waiver by the state, the Eleventh Amendment is a bar to suits for money damages against a state in a federal court. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury of Indiana,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). A waiver will be found "only where stated by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction." *Edelman v. Jordan, supra* 415 U.S. at 673, 94 S.Ct. 1347.

■ It is well established that, although a state is not a named party to the action, a suit may be barred by the Eleventh Amendment if the judgment against state officials will be paid out of state funds. *West v. Keve,* 571 F.2d 158, 163 (3d Cir. 1978).

The Department of Labor contends that the abrogation of sovereign immunity by the Pennsylvania Supreme Court is not determinative of whether Pennsylvania has relinquished its Eleventh Amendment immunity from suit in a federal court. *See, Edelman v. Jordan, supra* 415 U.S. at 677, n. 19, 94 S.Ct. 1347. It urges a crabbed reading of *Mayle* and a restriction of claims for money damages against the Commonwealth to the courts of that state.

■ The decisional guidance on the question of waiver of the Eleventh Amendment immunity in the main relates to two situations. First, whether a particular legislative enactment permitting suits against a state in its courts serves as a consent to suit in a federal court under the Eleventh Amendment. *Edelman v. Jordan, supra.* Second, whether acceptance by a state of certain federal benefits constitutes a waiver of immunity under the Amendment. *See, Daye v. Comm. of Pennsylvania,* 483 F.2d 294 (3d Cir. 1973).

In the case at bar, the parties have searched in vain for any case which discusses the survival of the constitutional immunity following a judicial abrogation of sovereign immunity. Our research has produced similar results.

■ Our reading of *Mayle,* however, leads to the conclusion that the Commonwealth has clearly and expressly waived its Eleventh Amendment immunity, and consented to suit in federal court. The judgment of this court is based upon the sweeping and unequivocal language of the Pennsylvania Supreme Court in abolishing the defense. Nowhere in the opinion is there any indication that the court intended that civil claims must be restricted to state court. To the contrary, the entire text leads inexorably to the conclusion that the immunity was abrogated in all cases and in all courts. In short, it leaves "no room for any other reasonable construction." *Edelman v. Jordan, supra* 415 U.S. at 673, 94 S.Ct. at 1361.

We note in passing that the decisions of the Court of Appeals for the Third Circuit, which have discussed sovereign immunity in this context, have applied Pennsylvania law that predated *Mayle.* Thus, the Court consistently dismissed diversity cases against the Commonwealth on the basis of the Pennsylvania doctrine of sovereign immunity.[3] Since the Court of Appeals was required in each instance to apply Pennsylvania law which no longer obtains, and since

---

3. *See, e. g., Daye v. Comm. of Pennsylvania,* 483 F.2d 294 (3d Cir. 1973); *O'Neill v. Comm. of Pennsylvania,* 459 F.2d 1 (3d Cir. 1972).

the opinion of Justice Roberts is clear and unambiguous in its intent, we are satisfied that the test of *Edelman* has been met.

We are cognizant of the principle that a state's consent to be sued in its own courts does not necessarily constitute a waiver of its Eleventh Amendment immunity. *Chandler v. Dix,* 194 U.S. 590, 591–592, 24 S.Ct. 766, 48 L.Ed. 1129 (1904); *Richins v. Industrial Const., Inc.,* 502 F.2d 1051 (10th Cir. 1974); *Scott v. Bd. of Supervisors,* 336 F.2d 557 (5th Cir. 1964). However, the foregoing authorities deal with a judicial construction of a *legislative* waiver which designated a state court in which suit was to be filed.[4] They are not dispositive of the instant question.[5] Here we are confronted with a judicial waiver of sovereign immunity and the *Edelman* test is determinative of whether Pennsylvania has waived its constitutional immunity.

In attempting to discern the intent of the Pennsylvania Supreme Court in *Mayle,* we have examined the historical basis of the Eleventh Amendment. In *Chisholm v. Georgia,* 2 Dall 419, 2 U.S. 419, 1 L.Ed. 440 (1793), the Supreme Court held that states were subject to suits in Federal Court for obligations to citizens of various states. The Amendment was adopted within five years in order to protect state treasuries from payment of public funds to private parties. *Edelman v. Jordan, supra* 415 U.S. at 662–663, 94 S.Ct. 1347. That purpose, however, has now been explicitly repudiated by the Supreme Court of Pennsylvania as a basis for a judicial impediment to suits by private parties. The Court explained:

> The financial burden argument is no more compelling now than it was in 1790, and no more so in the context of State government than in the context of local governments or charities. We continue to reject it.

*Mayle v. Pennsylvania Dept. of Highways,* 479 Pa. 384, 388 A.2d 709, 715 (1978). Since the rationale for the Eleventh Amendment was rejected by the highest court of Pennsylvania as a basis for denying redress to legitimate claimants, and since the opinion of Justice Roberts is profound in its scope, we perceive no justification for continuing a jurisdictional impediment that has fostered mischief, and which is based upon an unsound premise.

We hold that the decision of the Supreme Court of Pennsylvania, which abolished the doctrine of sovereign immunity, also abrogates the Eleventh Amendment immunity by such overwhelming implication so as to eliminate any other reasonable construction. The motion to dismiss of the Department of Labor must be denied.[6]

### III. *Official Immunity*

As an alternative ground for dismissal of the third-party complaint against Bellinotti, counsel argues that the Pennsylvania doctrine of official immunity bars the third-party claim of Vesella.

■ The judicial doctrine of official immunity extends an absolute immunity from suit to "high public officials," *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968), and a conditional immunity from suit to all Commonwealth employees, if an act is within the scope of their authority, and not intentional, malicious, wanton or reckless. *Harris v. Rundle,* 27 Pa.Cmwlth. 445, 366 A.2d 970 (1976).

---

4. It is of historical interest to note that the General Assembly of Pennsylvania objected to closing the doors of Federal Court to suits against the Commonwealth when it refused to recommend or ratify the Eleventh Amendment to the Constitution.

5. Our attention has been directed to the decision of *Bagby v. Beal,* 455 F.Supp. 881 (M.D.Pa. 1978). We disagree with *Bagby* because it appears to base the result upon authorities which relate to a legislative waiver of sovereign immunity, and not the test of *Edelman.*

6. The third-party defendants also argue that any judgment against Bellinotti must be paid from state funds and thus the claim against the inspector is similarly barred by the Eleventh Amendment. Inasmuch as our holding precludes the utilization of the constitutional immunity, we need not determine whether a judgment against Bellinotti will be paid from state funds.

The third-party complainant Vesella rejoins that, in light of the abolition of sovereign immunity in Pennsylvania, the defense of official immunity is *ipso facto* abrogated, since that doctrine is indistinguishable from the concept of sovereign immunity. We disagree.

Before *Mayle,* Pennsylvania courts justified sovereign immunity on the grounds that imposition of tort liability would overburden the courts, and either bankrupt the Commonwealth or endanger its financial stability. *Mayle v. Pennsylvania Dept. of Highways, supra* at 713. Official immunity, on the other hand, is grounded upon a separate rationale. As the Superior Court stated in *Ammlung v. Platt,* 224 Pa.Super. 47, 302 A.2d 491 (1973):

> The rule that employees of the sovereign may avoid liability with respect to certain conduct which would otherwise be tortious is of long standing. It is designed to prevent an excess of caution, based upon considerations, of personal liability or subjection to suit, from influencing a decision requiring the exercise of judgment. On balance, it is thought that the injury to the public resulting from an overcaution by officials on matters of judgment would outweigh the injury to private persons which would result from an absence of caution. *Id.* at 52, 302 A.2d at 494.

These policy considerations remain extant despite the abrogation of sovereign immunity. Without official immunity, progress toward inventive and dynamic decision making might be hampered, as officials may be more concerned with rechecking work which has been completed. *Lehnig v. Felton,* 235 Pa.Super. 100, 105, 340 A.2d 564, 565 (1975). More importantly, a plaintiff who is injured by Commonwealth employees, acting within the scope of their employment, is no longer remediless, since recovery may now be had against the Commonwealth and its agencies. In fact, at least one commentator has suggested that as the doctrine of sovereign immunity breaks down, official immunity may expand since "the courts will be relieved from the need for choosing between leaving a deserving plaintiff without remedy and imposing liability upon the individual officer or employee, who is usually either ill-equipped to bear the loss or is performing the type of function that can be properly performed only if the officer is free from the need of considering his own pocketbook." 3 K. Davis, Administrative Law Treatise § 26.07 (1958).

While it may be argued that the immunity of Commonwealth employees cannot stand absent the immunity of their employer, Pennsylvania case law is to the contrary. In *Ayala v. Philadelphia Bd. of Public Educ.,* 453 Pa. 584, 305 A.2d 877 (1973), a governmental immunity for political subdivision was abolished. Relying on *Ayala,* a plaintiff brought suit against specific township supervisors. The Commonwealth Court upheld their dismissal from the suit, holding that governmental immunity and official immunity are separate doctrines and the abrogation of one does not necessitate the abolition of the other. *Wicks v. Milzoco Builders, Inc.,* 25 Pa. Cmwlth. 340, 360 A.2d 250 (1976).

One final reason exists for our conclusion that official immunity is still viable in Pennsylvania despite the abrogation of sovereign immunity. As a Federal Court in a diversity case of this type, we are required to apply the substantive law of the state in which we sit. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The *Mayle* decision did not address itself to official immunity; therefore, we must apply that doctrine unless we are satisfied the Pennsylvania courts would not follow the rule if faced with the issue today.

We conclude that the doctrine of official immunity would withstand any such challenge in the Pennsylvania courts. Justice Roberts, who wrote the majority (4–3) opinion in *Mayle,* has recently expressed his support for the doctrine of official immunity stating:

> Commentators differ widely on how broad the immunity extended to public officials should be, compare 3 K. Davis, Administrative Law Treatise §§ 26.01–

322

26.07 (1958) with W. Prosser, Torts § 132 (4th ed. 1971), but agree that some form of immunity is necessary:

'The complex process of legal administration requires that officers shall be charged with the duty of making decisions, either of law or of fact, and acting in accordance with their determinations. Public servants would be unduly hampered and intimidated in the discharge of their duties, and an impossible burden would fall upon all our agencies of government if the immunity to private liability were not extended, in some reasonable degree, to those who act improperly, or exceed the authority given.' W. Prosser, Torts § 132 at 987 (4th ed. 1971). *Freach v. Commonwealth*, 471 Pa. 558, 575, 370 A.2d 1163, 1171–1172 (1977) (dissenting opinion) (emphasis added).

We believe that these remarks, from the author of the opinion which abolished sovereign immunity in Pennsylvania, buttress our conclusion that official immunity remains the law in Pennsylvania. As such, we refuse to extend *Mayle* beyond its already sweeping ambit.

### IV. Sufficiency of the Third-Party Complaint as to Third-Party Defendant Bellinotti

In light of our holding, namely, Bellinotti is entitled to some form of official immunity (absolute or conditional), we must now determine whether the third-party complaint of Vesella states a claim upon which relief can be granted.

■ The third-party complaint alleges that Bellinotti inspected the premises, but did not advise Vesella of the unsafe, improper or dangerous conditions and did not initiate remedial action.[7] If the facts establish that Bellinotti is a "high public official," [8] he is absolutely immune from liability for negligent acts within the scope of his authority. *Freach v. Commonwealth, su-*

---

7. *See* paragraph 21 of the third-party complaint.

8. "It has been suggested that the determination of whether a particular public officer is protected by an absolute privilege should depend upon

*pra.* However, there is insufficient evidence of record for the court to determine the status of the employee. Hence, the Commonwealth's motion to dismiss on grounds of absolute immunity must be denied without prejudice to renew upon completion of discovery.

We also note that, even if Bellinotti's immunity is conditional, the third-party complaint fails to state a claim upon which relief can be granted, since there is no allegation that Bellinotti's conduct was intentional, malicious, wanton, or reckless. *See, Daye v. Commonwealth*, 483 F.2d 294, 299 (3d Cir. 1973). The complaint refers only to negligence. Such conduct is inadequate to impose liability upon Bellinotti irrespective of his status.

We will accord the third-party plaintiff 20 days within which to amend the third-party complaint in order to plead facts which state a claim against this party upon which relief can be granted. If Vessela is unable to plead such a claim, Bellinotti may renew the motion to dismiss at that time.

An appropriate order will follow.

---

the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Montgomery v. Philadelphia*, 392 Pa. 178, 186, 140 A.2d 100, 105 (1958) (Applying the test described).