[L.A. No. 29895. In Bank. Apr. 13, 1972.]

JESSE M. STANFORD, Plaintiff and Appellant, v.
CITY OF ONTARIO, Defendant and Appellant.

## COUNSEL

Hagenbaugh, Murphy & Davies and Herbert H. Hiestand, Jr., for Plaintiff and Appellant.

Thompson & Colegate, Bruce Morgan and Frederick J. Lower, Jr., for Defendant and Respondent.

## OPINION

**SULLIVAN, J.**—Plaintiff appeals from a portion of a judgment of nonsuit entered in an action for damages for personal injuries.

Viewing the evidence under the well-settled rules governing nonsuits[1] and in the light most favorable to plaintiff, we set forth the following pertinent facts.

In February 1966, Mrs. Mary Morrison, a resident of defendant City of Ontario (City) wished to connect her dwelling on East Fifth Street with the City's common sewer system which ran underneath the street but did not extend as far as her home. A city ordinance required homeowners in Mrs. Morrison's position to make arrangements at their own expense with a licensed plumbing contractor to extend the City's 8-inch common sewer a sufficient distance along the street and to construct and connect with it lateral sewers leading from the abutting property. The contractor was required to obtain a permit from the City to perform the work.

On February 2, 1966, the Public Works Department of the City issued the necessary permit[2] to Tennison Cesspool and Sewer Co. (Tennison) the contractor chosen by Mrs. Morrison. At this time, the existing common sewer beneath the center of the street was owned by the City. Mrs. Morrison, however, paid for the sections of eight-inch pipe needed to extend the common sewer as well as for all the costs in installing them. Upon completion of the work, this pipe became the property of the City.

The permit required Tennison to perform the necessary work in accordance with rigid specifications. It compelled compliance with numerous detailed provisions appearing on the reverse side of the permit as well as with "all City Ordinances, Resolutions, Standards, and Specifications currently in force . . . ." Among other things, these provided that Tennison would indemnify the City in respect to any claims for damages arising from injuries sustained by any persons in connection with the construction work. The City reserved the right to inspect the work and had the authority to

---

[1] "A nonsuit may be granted only where, disregarding conflicting evidence on behalf of the defendants and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." (*Reynolds* v. *Willson* (1958) 51 Cal.2d 94, 99 [331 P.2d 48]; see also *Blumberg* v. *M. & T. Incorporated* (1949) 34 Cal.2d 226, 229 [209 P.2d 1]; *Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768].)

[2] We have examined the original permit which was received in evidence and is part of the record on appeal.

halt construction, if necessary, in order to insure compliance with the stated requirements.

The City's engineers surveyed and staked the proposed excavation in order to locate the sewer for Tennison and to indicate the precise lines for its extension. On February 3, 1966, Tennison commenced the excavation to reach the common sewer nine feet beneath the City street by breaking up the asphalt with a jack hammer. The trench was dug by a back hoe. At the close of the first day's work, some attempt was made to shore the sides of the excavation, but to no avail due to the sandy composition of the soil. The following morning the trench was completed to a depth of nine feet, without any shoring or sloping. About 8:30 a.m., Jesse Stanford and another employee of Tennison went down into the ditch to lay the sewer pipe. While they were installing the third section of pipe the sides of the excavation caved in, burying plaintiff up to his armpits and causing him serious bodily injuries.

Evidence was also received as to minimum safety requirements established for excavations by the Division of Industrial Safety of the State of California and found in Construction Safety Orders 1540 and 1541. These orders provided generally that any excavation or trench five feet or more in depth should be shored or sloped as specified in the orders to prevent the exposure of workmen to the hazards of moving ground. An inspector of the Division of Industrial Safety testified as to the above requirements, including the specific methods of shoring and the angles and extent of sloping where shoring was not used.

Plaintiff brought the instant suit asserting liability against the City in two separately stated causes of action. The first alleged that City firemen negligently removed him from the cave-in, thereby causing him injuries. The second alleged that the City entered into a contract with Tennison to construct the sewer, that the City knew or should have known that the contemplated excavation would create great risk of death or harm to people working in the ditch unless the ditch was properly shored or sloped, that the City negligently failed to shore or slope the ditch in accordance with the requisite construction safety orders, that the City negligently failed to inspect the progress of the work, that the City negligently failed to provide plaintiff with a safe place to work, and that as a proximate result of all of these acts of negligence, the ditch caved in and plaintiff was injured.

At the close of plaintiff's case, the court granted the City's motion for a nonsuit and entered judgment accordingly. As to the second cause of action, the trial court ruled that plaintiff had failed to establish a contractual relationship between Tennison and the City and had also failed to establish

any duty on the part of the City, whether nondelegable or mandatory. Plaintiff appeals from the judgment only as to the second cause of action.

Plaintiff advances four arguments in support of his contention that the court erred in granting the nonsuit. They may be conveniently summarized as follows: (1) That the City failed to comply with Construction Safety Orders 1540 and 1541 and thus incurred liability under Government Code section 815.6;[3] (2) that the City was a statutory employer under Labor Code section 6304 and as such was liable for failure to furnish a safe place of employment and to comply with the above construction safety orders; (3) that the City owed a legal duty of care under Government Code section 815.4;[4] and (4) that the City had constructive notice of a dangerous condition on its property which it failed to remedy and thus was liable under Government Code section 835.[5] We conclude that plaintiff's first three arguments cannot prevail but that his fourth argument has merit.

We consider the first two arguments together since if either one is to be sustained it must appear from the evidence that the City was a statutory employer.

 The first argument is premised on the City's alleged failure to comply with Construction Safety Orders 1540 and 1541 (Cal. Admin. Code, tit. 8). But these orders by their terms are applicable only to "employers" and title 8, California Administrative Code section 1504(1) defines employer as follows: "Employer shall have the same meaning as in Section 6304

---

[3]Section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

[4]Section 815.4 provides: "A public entity is liable for injury proximately caused by a tortious act or omission of an independent contractor of the public entity to the same extent that the public entity would be subject to such liability if it were a private person. Nothing in this section subjects a public entity to liability for the act or omission of an independent contractor if the public entity would not have been liable for the injury had the act or omission been that of an employee of the public entity."

[5]Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

of the Labor Code . . . ." As a result the first argument actually overlaps the second.

The second argument proceeds thusly: Section 6304 of the Labor Code defines the term "employer" as including "every person having direction, management, control, or custody of any employment, place of employment, or any employee." Sections 6400-6403[6] of the same code provide that every employer shall furnish a safe place of employment, shall furnish and use safety devices, safeguards and methods reasonably adequate to render the place of employment safe, and shall not require or permit any employee to be in an unsafe place of employment. More particularly, the City as a statutory employer was subject to the duty of complying with Construction Safety Orders 1540 and 1541.

But the above statutory definition of "employer" upon which plaintiff rests both arguments does not have the literal breadth that plaintiff would ascribe to it. ▮ We have said that the above sections of the Labor Code "should not be construed as meaning that, where a general contractor or owner of premises does nothing more with respect to the work done by an independent contractor than exercise general supervision and control to bring about its satisfactory completion, it is his responsibility to assure compliance with all applicable safety provisions of the code and regulations issued thereunder, including those relating to the manner in which the independent contractor performs operative details of the work not affecting its ultimate result." (*Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 106 [18 Cal.Rptr. 527, 368 P.2d 127].) More recently we made clear that "The mere right to see that work is satisfactorily completed does not impose upon one hiring an independent contractor the duty to assure that the contractor's work is performed in conformity with all safety provisions." (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 257 [66 Cal.Rptr. 20, 437 P.2d 508].) (See also *Souza* v. *Pratico* (1966) 245 Cal.App.2d 651, 657

---

[6]Section 6400 provides: "Every employer shall furnish employment and a place of employment which are safe for the employees therein."

Section 6401 provides: "Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes, which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every other thing reasonably necessary to protect the life and safety of employees."

Section 6402 provides: "No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe."

Section 6403 provides: "No employer shall fail or neglect: [Par.] (a) To provide and use safety devices and safeguards. [Par.] (b) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe. [Par.] (c) To do every other thing reasonably necessary to protect the life and safety of employees."

[54 Cal.Rptr. 159]; *Conner* v. *Utah Constr. & Mining Co.* (1964) 231 Cal.App.2d 263, 270-271 [41 Cal.Rptr. 728].)

■ We must, therefore, determine whether the evidence shows that the City was an employer within the statutory definition as construed by the above decisions. Viewed according to the rules governing nonsuits (see fn. 1, *ante*) the record clearly shows that the City at the most had a right of general supervision or a mere right to see that the work was satisfactorily completed and thus could not, as a matter of law, be found to be an employer within the meaning of section 6304 of the Labor Code. Plaintiff was a laborer employed by the Tennison company which had been engaged by Mrs. Morrison to connect her residence to the City sewer system. The City licensed Tennison to extend the common sewer and construct lateral sewers to the Morrison residence. By the terms of the permit the City reserved the right to inspect and the right to halt construction in order to insure compliance with the various construction and safety requirements specified in the permit.

However, there is no evidence to show that the City exercised any on-the-job direction of the work at the site of the excavation. The City neither had power to, nor in fact did, exercise any supervision over operative detail. Rather the City had merely retained the right of general supervision and the right to see that the work was satisfactorily completed. Thus under *Kuntz* and *Van Arsdale* the City was not an employer within the meaning of section 6304 of the Labor Code. We, therefore, reject plaintiff's first two arguments as lacking in merit.

■ His third argument also fails for the simple reason that the City was not the employer of Tennison. ■ Government Code section 815.4 (see fn. 4, *ante*) provides that a public entity is subject to the same liability for tortious acts of independent contractors as a private person. In *Van Arsdale* we held that this statutory liability included the rule embodied in section 416 of the Restatement Second of Torts[7] that one who employs an independent contractor to do work which the employer should know creates a "peculiar risk of harm to others unless special precautions are taken" is liable when the contractor negligently fails to take such precautions, even if the employer provided for such precautions in the employment contract. Section 416 is made specifically applicable to "[o]ne who

---

[7]Section 416 of the Restatement Second of Torts provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

employs an independent contractor." Government Code section 815.4 applies only to "an independent contractor of the public entity." (See fn. 4, *ante.*) Thus, it is quite clear that liability under section 815.4 is predicated initially upon the relationship of employer and independent contractor.

The evidence is undisputed that Mrs. Morrison engaged Tennison and that the City merely issued that company a permit to do the work. Plaintiff urges that despite the fact that the City did not formally employ Tennison, nevertheless it should be found to have effectively employed Tennison through the form of a permit since the City owned the street and the sewer to be constructed, required indemnity from Tennison as to all liability arising from personal injuries sustained as a result of Tennison's tortious conduct in completing the excavation, specified the standards of construction and safety, and reserved the right to inspect and the right to halt construction until satisfied that all requirements were being met by Tennison. However, all of the factors just mentioned are entirely consistent with the relationship which in fact existed between the City as the permit-issuing authority and Tennison, as the permittee. We decline to extend the liability under Government Code section 815.4 as interpreted in *Van Arsdale* to include a person who is an independent contractor of a third party and is merely issued a permit by the public entity to perform work but who is not "an independent contractor *of the public entity.*" (§ 815.4; italics added.)

Plaintiff urges that this interpretation however accurate produces injustice. If the City had directly employed Tennison as an independent contractor to extend the sewer, then under *Van Arsdale* the City would have been under a duty to see that the excavation was adequately shored or sloped. In such a case the City could not have delegated this duty to the independent contractor by providing in the contract that shoring or sloping be done by the latter. Why then, plaintiff queries, should the City be allowed to avoid all responsibility by merely delegating the power to choose the independent contractor to the homeowner and regulating the conduct through the form of a permit instead of a contract?

The short answer is that the Tort Claims Act of 1963 (Stats. 1963, ch. 1681) treats public entity action by permit differently than action by contract with an independent contractor. The act divides governmental activity which may give rise to tort liability into two classifications: (1) responsibility undertaken when the government positively acts: (a) through its own employees (§ 815.2); (b) through an independent contractor (§ 815.4); pursuant to a mandatory duty imposed by an enactment (§ 815.6); and (2) responsibility arising from dangerous conditions on public property. Since the Tort Claims Act does not contain a specific classification

covering the public entity's role in granting permits or licenses,[8] action undertaken by public entities through permits or licenses is covered, if at all, by the rules relating to the public entity's role as property owner.

Section 835 (see fn. 5, *ante*), which deals with the responsibility of a public entity for the dangerous condition of its property, posits two alternative bases for liability: The first, under subdivision (a), where the dangerous condition has been created by the negligent or wrongful act or omission of an employee of the public entity; the second under subdivision (b), where the entity has had actual or constructive notice of the dangerous condition a sufficient time before the injury to have taken measures to protect against the condition. Since plaintiff has raised no claim that the dangerous condition, namely the inadequately shored and sloped excavation, was caused by an employee of the City and has raised no claim that the City had actual notice of the existence of this dangerous condition prior to plaintiff's injury, the sole remaining contention of plaintiff is that the City has sufficient constructive notice of the dangerous condition to be liable for injury proximately caused by this condition of its property.

 We therefore turn to consider plaintiff's fourth argument. Section 835 specifies that the requisite constructive notice is that notice defined in section 835.2. Section 835.2, subdivision (b)[9] requires plaintiff to establish

---

[8]However, section 818.4 does provide that a public entity is immune from liability for the negligent issuance of or the failure to issue, permits or licenses.

[9]Section 835.2: "(b) A public entity had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 835 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. On the issue of due care, admissible evidence includes but is not limited to evidence as to:

"(1) Whether the existence of the condition and its dangerous character would have been discovered by an inspection system that was reasonably adequate (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property.

"(2) Whether the public entity maintained and operated such an inspection system with due care and did not discover the condition."

The Legislative Committee Comment (Senate) of this section provides in relevant part: "Under the Public Liability Act of 1923, public entities are at times charged with 'constructive notice' of a defect because it would be obvious upon an inspection and because it has existed for a substantial period of time. Subdivision (b) continues these rules. Under subdivision (b), the plaintiff has the burden of proving that the public entity had constructive notice. In addition, the subdivision makes clear that evidence is admissible to show (1) what would constitute a reasonable inspection system, and (2) what inspection system was used by the public entity. The admission

that the conditon existed for: (1) "such a period of time" and (2) "was of such an obvious nature," "that the public entity, in the exercise of due care should have discovered the condition and its dangerous character" in order to establish constructive notice.

At the outset we must determine whether the California courts have placed a judicial gloss upon this language or the language of its predecessor section in the Public Liability Act of 1923, which recognizes special conditions of notice where the public entity authorized by permit or license the activity creating the dangerous condition upon its property. We note that outside of California, there is a line of judicial authority typified by *Spiker* v. *City of Ottumwa* (1922) 193 Iowa 844 [186 N.W. 465] and *District of Columbia* v. *Woodbury* (1886) 136 U.S. 450 [34 L.Ed. 472, 10 S.Ct. 990] which holds that if a public entity authorizes by permit a private person to make an excavation on a city street, it has received adequate notice of a potential dangerous condition on its property and accordingly bears a nondelegable duty to see that all necessary precautions are taken to insure that the excavation is safe. (See also 11 A.L.R. 1343; 63 C.J.S., Municipal Corporations, § 799, p. 111 et seq.; 39 Am.Jur.2d, Highways, etc., § 413, p. 811 et seq.)

Our attention has not been directed to, nor have we found, any reported California decisions applying the rationale of *Spiker* and *Woodbury* and holding that immediately upon, and merely by virtue of, issuing a permit for an excavation in its streets, a public entity incurs a nondelegable duty to see that the work is done properly. The furthest that our courts appear to have gone in imposing liability upon a theory of constructive notice in such a factual setting is exemplified by *Mulder* v. *City of Los Angeles* (1930) 110 Cal.App. 663 [294 P. 485]. There, however, the public entity not only issued the permit but specified that the work be carried out in a particular manner which in and of itself created the dangerous condition there involved. Accordingly it was held that under the Public Liability Act of 1923 there was sufficient notice to the City upon its issuance of the license so as to impose liability on it. In the instant case, on the contrary, the City expressly required Tennison to conform to safety regulations, which if complied with, would obviate any dangerous condition in the excavation. Thus, here the dangerous condition would not result from acting in accordance with the manner specified by the City as in *Mulder,* but only if the permittee failed to follow the terms set forth in the permit.

The precise question, then, upon which we must focus our attention is

---

of this evidence is necessary so that the issue of whether or not a public entity had constructive notice will turn on whether a reasonable inspection system would have disclosed the existence of the condition."

this: Is plaintiff's evidence, viewed under the rules governing nonsuit (see fn. 1, *ante*), of sufficient substantiality to support a verdict in his favor on the theory that the City under sections 835 and 835.2 had constructive notice of the dangerous condition causing plaintiff's injuries? We conclude that it is.

Section 835.2, as stated earlier in this opinion, requires a plaintiff seeking to establish constructive notice, to prove that the condition (1) existed for "such a period of time" and (2) "was of such an obvious nature," "that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." The Legislative Committee Comment (Senate) further amplifies the requirements of constructive notice in section 835.2 as follows: "Under subdivision (b) the plaintiff has the burden of proving that the public entity had constructive notice. In addition, the subdivision makes clear that evidence is admissible to show (1) what would constitute a reasonable inspection system, and (2) what inspection system was used by the public entity. The admission of this evidence is necessary so that the issue of *whether or not a public entity had constructive notice will turn on whether a reasonable inspection system would have disclosed the existence of the condition.*" (Italics added.) Once notice has been established, section 835, subdivision (b) imposes the additional burden of showing that the public entity received the constructive notice "a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

■ Plaintiff introduced evidence showing that the minimum safety requirements for excavations were found in Construction Safety Orders 1540 and 1541, promulgated by the Division of Industrial Safety of the State of California. (Cal. Admin. Code, tit. 8.) These orders were made specifically applicable to the digging of this excavation by the terms of the permit issued to Tennison. They required that any excavation or trench five feet or more in depth should be shored or sloped as specified in the orders to prevent the exposure of workmen to the hazards of moving ground. There is ample evidence in the record to show that an excavation to a depth in excess of five feet which is not adequately shored or sloped is extremely dangerous, creating a grave risk of injury due to cave-in. The evidence indicates that the ditch exceeded a depth of five feet sometime in the afternoon of February 3d; that the ditch was not shored due to the sandy composition of the soil, and was never adequately sloped. This dangerous, unshored, unsloped excavation remained in this condition from the afternoon of February 3d until sometime in the morning of February 4th, when plaintiff was injured in the cave-in.

Safety Inspector Schumaker testified that merely a quick glance on the part of any inspector would have revealed the dangerous condition of the

excavation. There is ample evidence to support a finding that the existence of the condition and its dangerous character were both sufficiently obvious. Moreover, if a City inspector had appeared at the excavation during this time period, he would have had ample opportunity to "take measures to protect against the dangerous condition," since he could recognize the existence of the dangerous condition immediately and since he had authority under the permit issued by the City to Tennison *immediately to suspend all work* until the safety requirements were met.

Thus, the City had constructive notice of the dangerous condition provided that it had existed "for such a period of time" that "a reasonable inspection would have disclosed the existence of the condition." The City argues that as a matter of law the dangerous condition existed for an insufficient period of time to afford the City constructive notice. We disagree. The City knew when the excavation was to be commenced by virtue of issuance of the permit plus the knowledge of its engineers who surveyed and staked the excavation in order to indicate the precise lines for the extension of the sewer. The City knew that the excavation had to be a depth of nine feet and further could be charged with knowing that unless the excavation was adequately shored or sloped, an extremely dangerous condition would result on its property.[10] Furthermore it can be readily inferred that for some time prior to the commencement of this particular excavation, the City must have been aware of the sandy composition of the soil at this location since the public sewer which it owned had already been extended to the very spot where the Tennison work began. Presumably prior extensions had been made and completed under City permit and supervision. In short, when the permit was issued to Tennison, the City already knew that the installation would have to be made by a narrow trench, to a depth of nine feet, in soil necessitating shoring or sloping. The City employed a full-time inspector, one of whose duties was to inspect excavations in City streets. The inspector could have determined the safety of the excavation by a routine, brief viewing of the excavation which in the instant case would have instantly disclosed the danger without any detailed inspection. Where the lives of work-

---

[10]The City appears to claim that the dangerous condition may not have been on its property. The City concedes that it owned the easement for the street. However, it claims that it was only a surface easement, that the record is silent as to who owned the subsurface, and that Civil Code section 831 provides a presumption that the abutting landowner owns to the middle of the street.

Section 830 defines "[p]roperty of a public entity" as real or personal property owned or controlled by the public entity. The City makes no claim that it did not have an easement to construct the sewer, which it subsequently was to own in fee. It is clear that the City exercised control over the street, the sewer and the excavation. The present posture of the evidence would clearly support a finding that the excavation was on property of a public entity.

men are imperiled, certainly it cannot be said as a matter of law that such an inspection would impose an unreasonable burden on a public entity.

We are satisfied that there is sufficient evidence in the record to support a finding by a jury that a reasonable inspection would have disclosed the existence of the unshored and unsloped excavation; that there would have been adequate time to take preventive measures; and that the City had constructive notice of the dangerous condition upon its property.

The judgment of nonsuit is reversed as to the plaintiff's second stated cause of action. In all other respects the judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.