**Fairman v. A.A. Gallagher Warehousing Corp.**

*Arnold J. Wolf*, for plaintiffs.
*John Monaghan*, for defendants.

KALISH, *J.*, June 8, 1979—

## I. BACKGROUND

The minor plaintiff brought this action against defendants Gallagher Warehousing Corp. (Gallagher) and the City of Philadelphia (City) for injuries suffered on March 15, 1976, while playing in an abandoned warehouse allegedly owned by defendant Gallagher. Plaintiff contends that since the City had knowledge of the dangerous conditions in this warehouse but took no precautionary measures to protect plaintiff, the City is responsible for his injuries. The City filed preliminary objections in the nature of a demurrer, asserting that it could not be liable since it had no duty to plaintiff on these allegations. It contends that: (1) since the City never had possession of the premises, it had no duty to keep it in repair; (2) the City owed no duty specifically to this plaintiff, but only to the public generally; and (3) its duty to inspect buildings or enforce ordinances pertaining to health and safety or to enforce provisions of the City Charter was discretionary.

## II. DISCUSSION

In order to constitute a cause of action in trespass for negligence, there must exist a duty owed to this plaintiff by defendant. Whether a duty was owed to this plaintiff is a question of law to be decided on a demurrer. If no duty existed, then the demurrer should be sustained.

It does not matter how the duty arises: Whether by common law, statute, or contract. The important consideration is the existence of such duty. In this connection it must be borne in mind that the Supreme Court's abrogation of municipal immunity[1] did not create any new liability or duty. It simply removed the defense of municipal immunity from tort actions regardless of whether the activity involved was governmental or proprietary. The Ayala decision intended to make the governmental defendant subject to tortious liability to the same degree as the private defendant and did not leave any exception to immunity for discretionary municipal acts.[2] "'[W]here governmental immunity has had the effect of encouraging laxness and a disregard of potential harm, exposure of the govenment to liability for its torts will have the effect of increasing governmental care and concern for the welfare of those who might be injured.'" Ayala, supra.

---

1. Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 599, 305 A. 2d 877, 886 (1973).

2. There has been a strong tendency on the part of most courts to frown upon any kind of governmental immunity. See Nevada v. Hall, 99 S.Ct. 1182, 59 L.Ed. 2d 416 (1979) (State of Nevada not immune from suit in California Court in spite of Nevada statute limiting suits against the state).

The case of Ricketts v. Allegheny County, 409 Pa. 300 (1962), principally relied on by the City, with a factual background similar to this case, is not applicable since it predated the Ayala case. That court never reached the issue of the City's duty, instead resolving the case on the threshold question of sovereign immunity of the county health department.

Our Supreme Court had the opportunity to retain a partial immunity for municipalities but did not choose to do so. Not until five years after Ayala did the legislature respond with the Act of November 26, 1978, P.L. 1399, 53 P.S. §5311.101 et seq., reestablishing municipal immunity for causes of action arising after January 25, 1979, except for damages resulting from activities falling into eight specified areas.[3] This statute excludes liability for the negligent furnishing of discretionary services as alleged in the case at hand. The legislature, clearly concerned over the door to municipal liability being left wide open by Ayala, decided to exclude liability for discretionary municipal acts. When this cause of action arose, it was permissible to sue a city for the negligent furnishing of services and a municipal corporation could not hide behind the shield of dis-

3. These categories are as follows: (1) municipal operation of motor vehicles; (2) care of other personal property in the municipality's control; (3) control of real property in the possession of the municipality; (4) dangerous condition of traffic lights or street lights under the control of the municipality; (5) dangerous conditions in the municipality's utility systems; (6) dangerous conditions of streets; (7) dangerous conditions of sidewalks; and (8) custody of animals in the possession of the municipality: 53 P.S. §5311.202.

cretion.[4] Almost every action taken by a municipal employe involves some degree of discretion. If a minor degree of discretion would suffice to protect the governmental body from liability, then Ayala's broad abrogation of immunity would have been effectively overruled in many respects. See Breiner v. C & P Home Builders, 536 F. 2d 27 (3d Cir. 1976); Adams v. Alaska, 555 P. 2d 235 (Alaska, 1976).[5] Moreover, since plaintiff alleges knowledge of the existence of the condition of the building on the part of defendant City, the situation passed beyond the discretionary phase. Once the City gains knowledge of a dangerous condition, it no longer has discretion not to take action.

The City's duty to plaintiff arises by virtue of the Philadelphia Home Rule Charter and the Philadelphia Code under which it is required to note violations of laws for the protection of persons from the hazards of abandoned buildings and to take action to correct any unlawful conditions.

"The Department of Licenses and Inspections shall have the power *and its duty shall be to perform the following functions*: (a) it shall, except as otherwise specifically provided in this charter, administer and enforce all statutes, ordinances and

---

4. This court does not suggest that a municipality may be sued in tort for a discretionary policy matter. It is the negligent implementation of that policy which may produce liability.

5. Royal Indemnity Co. v. City of Erie, 372 F. Supp. 1137 (W.D. Pa. 1974) (municipality could be liable for failure to enforce building and fire codes). See also, Wicks v. Milzoco Builders, Inc., 25 Pa. Commonwealth Ct. 340, 360 A. 2d 250 (1976) (possible municipal liability for failure to enforce subdivision ordinance).

regulations for the protection of persons and property from hazards, in the use, condition, erection, alteration, maintenance, repair, sanitation . . . removal and demolition of buildings and structures or any parts thereof . . . (c) the Department shall make all inspections except as otherwise specifically provided in this charter . . . the Department shall train and maintain a competent force of inspectors, who, to the extent practicable, shall make single inspections within the scope of the functions of the Department to determine compliance with statutes, ordinances and regulations; (d) the Department shall determine as a result of its inspections whether any person or the owner of any property is violating the conditions of any license, or whether or not any property owner is violating any statute, ordinance or regulation which it is the duty of the Department to enforce. If the Department shall find a violation to exist, it shall forthwith make such order or take such other lawful action as may be necessary to correct the dangerous or unlawful condition, and if necessary shall invoke the assistance of the Law Department or the Philadelphia Police or both." (Emphasis supplied.) §5.5-1002, Philadelphia Home Rule Charter.

Additionally, the Philadelphia City Council has made a legislative finding that a large number of vacant industrial properties are scattered throughout the city and have become hazardous to the health and safety of the public to such a degree that they have become public nuisances: §4-1601, Philadelphia Code. A public nuisance is defined not only as one considered such at common law but also as an abandoned building considered an attractive

nuisance to children: supra, §4-1602. The charter further provides the procedures to be followed when the City determines the vacant building to be a public nuisance and gives the Department of Licenses and Inspections the authority to take immediate measures to correct any condition deemed to be an immediate hazard to the safety of the public: supra, §4-1604.

The City next maintains that even if it owes a duty to the public under the City Charter and the Philadelphia Code, this duty is owed to the public generally, not to any one individual. The adoption of this principle would release the City from any liability. Once there is a duty owed to the public generally, it is a duty owed to individual members of the public, if they are in the class meant to be protected. It arises from the need to vindicate the interests of those persons who rely in good faith upon the official inspection process: Campbell v. City of Bellevue, 85 Wash. 2d 1, 530 P. 2d 234 (1975); Coffey v. City of Milwaukee, 74 Wis. 2d 526, 247 N.W. 2d 132 (1976).

The duty arises from the City's affirmative decision to inspect properties. Moreover, it assumes a common law duty as embodied in section 324A of the Restatement, 2d, Torts, which has been adopted in Pennsylvania.[6] See Hamil v. Bashline,

---

6. Section 324A reads: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if a) his failure to exercise reasonable care increases the risk of such harm, or b) he has undertaken to perform a duty owed by the other to the third person, or c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

481 Pa. 256, 392 A. 2d 1280 (1978); Adams v. Alaska, supra (state assumes duty when undertaking to inspect hotel); Coffey v. City of Milwaukee, supra (state undertook to inspect buildings and so assumed duty).

This duty to act may be breached by a failure to act as well as by unreasonable action. If the City had such knowledge of a dangerous condition that it should have taken reasonable steps to abate such condition, failure to take any steps may constitute negligence: Rost v. Wickenheiser, 229 Pa. Superior Ct. 84, 323 A. 2d 154 (1974) (duty to investigate arises when reasonable person would recognize existence of risk); Brown v. MacPherson's, Inc., 86 Wash. 2d 293, 545 P. 2d 13 (1975) (state liable for failure to advise residents of avalanche danger after advising avalanche expert that it would do so); Stanford v. City of Ontario, 6 Cal. 3d 870, 495 P. 2d 425, 101 Cal. Rptr. 97 (1972) (city liable for failure to enforce city regulations for shoring up street excavations where city had knowledge of dangerous condition); Gannon Personnel Agency v. City of New York, 57 A.D. 2d 538, 394 N.Y.S. 2d 5 (1977) (city liable where it had actual knowledge of potential danger created by dangerous pipes but failed to take appropriate action). Here, plaintiff has alleged that the City had knowledge not only of the dangerous conditions in an abandoned property but also that children played on this property. This is a sufficient allegation of negligent behavior.

A child playing in an abandoned warehouse is presumed to be an intended beneficiary of this statutory and common law duty and so owed a duty of due care by the City: Halvorson v. Dahl, 89 Wash. 2d 673, 574 P. 2d 1190 (1978) (tenant presumed to be intended beneficiary of housing ordinance and so duty owed to him). The City Council

finding, discussed above, relating to the danger to children from abandoned buildings,[7] makes it clear that the minor plaintiff is indeed an intended beneficiary. This concept of duty is nothing more than a restated version of the standard test for the existence of a duty: Is it foreseeable that plaintiff will be injured? Gerdes v. Booth & Flinn, 300 Pa. 586, 132 Atl. 845 (1930). Every person has a duty to refrain from conduct which could cause a foreseeable risk of harm to others: Zilka v. Sanctis Construction, Inc., 409 Pa. 396, 186 A. 2d 897 (1962).The City must be held to have foreseen that its alleged negligence in not performing the required inspection might have foreseeably resulted in harm to someone.

The preliminary objections of defendant, City, are therefore dismissed.

## ORDER

And now, June 8, 1979, it is hereby ordered and decreed that the preliminary objections of defendant City of Philadelphia are hereby denied, and defendant city shall answer plaintiffs' complaint within 30 days. It is this court's opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion. An immediate appeal from this order may materially advance the ultimate termination of the matter.

---

7. Section 4-1602(2) of the Philadelphia Code reads: "Public Nuisances. In this Chapter 'public nuisance' shall mean: . . . (b) Any physical conditions or use or occupancy of any vacant commercial and/or industrial building or its appurtenances considered an *attractive nuisance to children*, including but not limited to, abandoned wells, shafts, basements, excavations and unsafe fences." (Emphasis supplied.)