Filed 10/17/25  Perez v. City of Bakersfield CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ADOLPH PEREZ, JR., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF BAKERSFIELD,<br><br>Defendant and Respondent. | F089050<br><br>(Super. Ct. No. BCV-23-102754)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

Loeb & Loeb, Bernard R. Given II and Jennifer G. Kahn, for Plaintiffs and Appellants.

Virginia A. Gennaro, City Attorney, and Ashley E. Zambrano, Deputy City Attorney, for Defendant and Respondent.

-ooOoo-

This is a property damage dispute between appellants Adolph Perez, Jr. (Perez) and Champion Property and Investment, Inc. (Champion) (collectively appellants) and respondent the City of Bakersfield (the City).  The trial court sustained the City's third demurrer and dismissed appellants' complaint without leave to amend.  In this appeal,

appellants contend that the court erred by: (1) implicitly finding that Perez lacked standing to bring suit; (2) finding that Champion's claims were barred by the California Government Claims Act's (Government Code section 810 et seq.)[1] (GCA) six-month limitations period to bring suit; and (3) sustaining the demurrer without leave to amend. We conclude that the trial court correctly found that Perez lacked standing to bring suit, but erred by finding that Champion failed to meet the GCA's limitation period and that the complaint failed to plead a sufficient claim. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL BACKGROUND

*General Background*

Champion owns a building located at 2011 Chester Avenue in Bakersfield (the Property). Perez operates and manages the Property. Perez is also Champion's CEO, CFO, Secretary, Director and agent for service of process.

In December 2020, a fire broke out near the Property, as well as near the building next door at 2010 Chester Avenue. The Property and 2010 Chester Avenue sustained some fire damage. The City did not require the owner of 2010 Chester Avenue to demolish the building but allowed him to board up the building instead.

On September 8, 2022,[2] appellants received a notice from the City addressed to Champion. The notice was a 48-hour notice of summary abatement of a public nuisance pertaining to the Property. The notice explained that the City had determined the Property was an immediate hazard and danger to the public and that the City could abate the danger within 48 hours. The City also placed a lien on the Property, which prevented the Property from being sold.

---

[1] All further statutory references are to the Government Code.

[2] All references to dates are to dates in 2022 unless otherwise stated.

2.

On September 23, the City demolished the Property's support walls. The City never provided appellants with an engineering inspection and report. Because of this failure, appellants were not given a sufficient opportunity to have support beams installed on the Property.

Sometime around October 19, the City entered into an independent contractor's agreement with Gilliam & Sons, Inc. (Gilliam) to demolish the Property. The City's agreement with Gilliam estimated that demolition/work was to begin on the Property on September 25, and be completed by November 24. However, Gilliam abandoned work on the Property, which led to the Property becoming a dangerous condition to public safety. The nature of Gilliam's work was inherently dangerous and was likely to create a peculiar risk of harm unless special precautions were taken. Appellants allege that Gilliam was negligent in the performance of its duties and that the City is liable for Gilliam's negligence. Appellants allege this negligence rendered the Property completely unusable and that approximately $1.3 million is needed for redevelopment.

*GCA Claim*

On February 7, 2023, Perez "on behalf of [Champion]" filed a GCA claim with the City. The GCA claim identifies the date of the incident in question as September 23, 2022. The GCA claim identifies the circumstances of the incident as follows: "The [C]ity committed waste by destroying the building's support walls as well as trespassing and violation of due process and disparate treatment in failing to allow time for support beams to be erected. The [C]ity failed to provide [an] engineer report to claimant and did not allow me time to have support beams installed on the [P]roperty similar to the support beams with [2010 Chester Avenue] on the same block." The GCA claim identified $800,000 in damages.

On February 28, 2023, the City denied in writing Champion's GCA claim.

## PROCEDURAL BACKGROUND

On August 18, 2023, Perez filed an original complaint (OC) in the Kern County Superior Court against the City for damage done to the Property. The OC identified Perez individually as the sole plaintiff. The OC alleged in part that the City destroyed the building's support walls without giving Perez sufficient time to stabilize the building. The OC alleged two claims against the City, one for "damages" and one for "release of lien." The OC sought $800,000 in damages.

On September 29, 2023, Perez filed a first amended complaint (FAC). Like the OC, the FAC alleged that the City destroyed the Property's support walls and included a claim for "damages" and a claim for "release of lien." The FAC sought $1.3 million in damages.

On January 10, 2024, the trial court sustained the City's demurrer and dismissed the FAC with leave to amend.

On January 25, 2024, Perez filed a second amended complaint (SAC). The SAC added Champion as a plaintiff and alleged that Champion owns the Property and Perez manages the Property. The SAC also identified Gilliam as the City's contractor who abandoned the abatement efforts at the Property. The SAC again alleged that the Property's support walls were destroyed without providing appellants sufficient time to erect support beams. The SAC also included two causes of action, one for "waste" (based in part on damage done to the Property) and one for "release of lien." The SAC sought $1.3 million in damages, but did not differentiate any rights, injuries, or damages as between Perez and Champion.

On May 20, 2024, the trial court sustained the City's demurrer and dismissed the SAC with leave to amend.

On May 30, 2024, appellants filed the third amended complaint (TAC). The TAC included Perez and Champion as plaintiffs and requested the same $1.3 million in damages. The TAC alleged that the City failed to provide sufficient time to erect support

beams on the Property and that Gilliam abandoned the abatement project.  The TAC dropped the prior claims for "damages" and "release of lien."  Instead, the TAC alleged two negligence claims against the City, the first one for vicarious liability for the acts of Gilliam.  The TAC sought $1.3 million in damages and did not differentiate the injuries, rights, and damages of Perez and Champion.

On August 27, 2024, the City filed a demurrer to the TAC.  The demurrer argued in part that:  Perez lacked standing, Champion's claims were barred by the six-month GCA limitation period for filing suit, and the TAC failed to sufficiently allege any causes of action.

On October 30, 2024, the trial court sustained the City's demurrer and dismissed the TAC without leave to amend.  The court's order in relevant part stated:  "The Court sustains [the City's] demurrer to the [TAC], finding each ground raised by [the City] meritorious.  The pleadings continue to fail to allege full compliance with [the section] 945.4 prefiling requirements as to the separate and distinct claims of [Perez] and [Champion].  The Court also finds that [Champion]'s claims are barred by the statute of limitations."

**DISCUSSION**

## I.     Standing of Perez

### A.     Parties' Arguments

Perez argues the trial court's implicit ruling that he did not have standing was erroneous.  Perez argues that he has standing because he was acting on behalf of Champion and has incurred expenses on behalf of Champion due to the City's abatement efforts.  Perez also argues that he is the legal owner of the Property because he is the sole owner and officer of Champion, and Champion owns the Property.

The City argues in part that Perez has failed to establish standing.  The City argues that Perez is improperly attempting to assert Champion's damages as his own and is blurring the distinction between himself as an individual and Champion as a corporation.

5.

Because Champion is the owner of the Property, the City argues that Perez does not have standing to bring claims for damage to the Property.

## B.     Legal Standard

Our Supreme Court has explained that, "in order to have standing, the plaintiff must be able to allege injury – that is, some 'invasion of the plaintiff's legally protected interests.' " (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175.)  By statute, "[e]very action must be prosecuted in the name of the real party in interest[.]"  (Code Civ. Proc., § 367.)  " '[T]he real party in interest is the party who has title to the cause of action, i.e. the one who as the right to maintain the cause of action' – 'the owner of the cause of action.' " (*Lazar v. Bishop* (2024) 107 Cal.App.5th 668, 677.)  If a plaintiff lacks standing because he is not the real party in interest, the complaint is subject to a demurrer.  (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004 (*Cloud*).)  The plaintiff has the burden to allege sufficient facts that establish standing. (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 809.)

## C.     Analysis

 It is well established that, " '[g]enerally, "a corporation is a distinct legal entity, separate from its shareholders and officers." ' " (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1450 (*Twenty-Nine Palms*); *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 150.)  As a distinct legal entity, a corporation has separate and distinct liabilities and obligations from its officers and shareholders.  (*Turman v. Superior Court* (2017) 17 Cal.App.5th 969, 980 (*Turman*); *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 528.)  Further, because a corporation is its own distinct legal entity, " 'when a corporation has suffered an injury to its property the corporation is the party that possesses the right to sue for redress.' " (*Denevi v. LGCC, LC* (2004) 121 Cal.App.4th 1211, 1216, fn. 3; *Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 183.)  In this case, these principles establish that Champion as the owner of the Property, and not Perez who is merely a shareholder and an officer of Champion, is the

6.

real party in interest for claims regarding damage to the Property. Perez's arguments to the contrary run afoul of these principles because they conflate Perez with Champion.

First, Perez argues that he has standing because he has incurred significant expenses on behalf of Champion to repair damage to the Property. However, if the expenses were *on behalf of Champion* as represented by Perez, then the expenses were actually those of Champion. That is, if Champion obtained the funds to pay the expenses from Perez, then *Champion* owes a debt to *Perez*. Simply because Champion utilized Perez to pay its expenses does not mean that the expenses then became those of Perez or even Champion *and* Perez. Champion as a corporation remains a distinct legal entity from Perez, and the obligations of Champion, including the obligation to pay repair expenses, are its own and not those of Perez as an individual. (See *Turman*, *supra*, 17 Cal.5th at p. 980; *Twenty-Nine Palms*, *supra*, 210 Cal.App.4th at p. 1450.)

Second, Perez argues that he has standing to sue as a representative of Champion. However, Champion does not require a representative to sue on its behalf. Champion is its own legal entity, has its own legal counsel, and is a plaintiff in this matter. Thus, Champion is already acting on its own behalf and protecting its own interests. Moreover, Perez's briefing establishes that he contends that Champion's harm and his own harm are identical and not separate or distinct. That is, Perez does not contend that he suffered damages in relation to the Property that are distinct from Champion's damages. Under these circumstances, Perez's presence as a "dual plaintiff" in this case is redundant and serves no discernable purpose, particularly not one that is sufficient to establish Perez's individual standing.[3] (*Stanford v. Unemployment Ins. Appeal Bd.* (1983) 147 Cal.App.3d

---

[3] We hasten to add that Perez, who holds multiple officer positions within Champion, can act and make decisions on Champion's behalf. (*Burdette v. Carrier Corp.* (2008) 158 Cal.App.4th 1668, 1689 [" '[A] corporation … may act only through its officers, agents, and employees.' "].) However, simply because Perez as an officer can act on behalf of Champion does not mean that Perez may act as a "dual plaintiff" on behalf of Champion in the same litigation. (*Twenty-Nine Palms*, *supra*, 210 Cal.App.4th

98, 104–105 [holding that a union was an unnecessary party that failed to state a claim because the union was not pursuing claims different from its member who was already a plaintiff in the action]; cf. (*Twenty-Nine Palms*, *supra*, 210 Cal.App.4th at p. 1450 ["The fact that Bardos is the responsible managing officer for BCI does not dissolve BCI's corporate status—BCI is its own legal entity."].).)

Third, Perez argues that he is a legal owner of the property because he is the sole owner of Champion and also occupies all of Champion's officer positions. Again, this argument ignores the nature of Champion. As a corporation, Champion is a distinct legal entity that is separate from Perez in his capacities as an individual, as an officer of Champion, and as Champion's sole shareholder. (*Twenty-Nine Palms*, *supra*, 210 Cal.App.4th at p. 1450.) Perez cites no authority that would allow him to "dissolve" the separate legal status of Champion in order to treat Champion and himself as one and the same or to treat Champion's assets as his own personal assets. Perez is essentially attempting to utilize a form of offensive veil piercing or alter ego theory. In other words, he wishes us to disregard Champion's separate corporate form for a perceived benefit to himself in this litigation. However, the alter ego doctrine is designed to allow a plaintiff to obtain assets from an individual, even though the debt or wrong is that of a defendant corporation, because there is a unity of interests in the corporation and the individual and an inequitable result will otherwise occur. (*Turman*, *supra*, 17 Cal.App.5th at pp. 980–981; *Bellerue v. Business Files Institute, Inc.* (1963) 215 Cal.App.2d 383, 398–399.) The circumstances of this case in no way resemble when the alter ego doctrine is applied. We will not sanction Perez's novel theory or disregard Champion's separate corporate existence. (See *Twenty-Nine Palms*, *supra*, 210 Cal.App.4th at p. 1450.)

---

at p. 1450 ["The fact that Bardos is the responsible managing officer for BCI does not dissolve BCI's corporate status—BCI is its own legal entity."].)

In sum, Perez has failed to establish his standing, and the trial court properly dismissed him from the lawsuit.

## II. Champion's Compliance with the GCA

### A. Parties' Arguments

Champion argues that the trial court erred by dismissing its claims as untimely under the GCA. Champion contends that its claims meet the requirements of the relation back doctrine because they rest on the same general set of facts as the OC and the same rights and remedies are at issue. Champion argues that since the relation back doctrine applies, his claims relate back to the OC and are considered timely filed.

The City argues the trial court correctly held that Champion's claims were barred by the GCA's six-month limitations period for filing a lawsuit. The City argues that the relation back doctrine does not apply because Champion is a distinct legal entity that is seeking to enforce an independent right as the owner of the Property, which is different from the claims pursued by Perez.

### B. Legal Standards

#### 1. GCA

Under the GCA, a claimant seeking money damages against a public entity must file an initial claim with the public entity. (§ 905; *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 989—990.) The claim must include the date, place, and circumstances of the occurrence giving rise to the claim. (§ 910; *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738.) If the public entity sends a written rejection of the claim, the claimant must file a lawsuit within six months of the notice of rejection. (§ 945.6, subd. (a)(1); *Jimenez v. Chavez* (2023) 97 Cal.App.5th 50, 62.) Because the six-month limitation period is a true statute of limitations (*Shirk v. Vista Unified School District* (2007) 42 Cal.4th 201, 209), the failure to file suit within the six-month limitations period bars the claimant's claims against the public entity. (*Feliz v. County of*

*Orange* (2023) 91 Cal.App.5th 927, 933; see also *Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 89–90.)

### 2. Relation Back Doctrine

Under the relation back doctrine, "a court deems an amended complaint to have been filed at the time of an earlier complaint." (*Hutcheson v. Superior Court* (2022) 74 Cal.App.5th 932, 940 (*Hutcheson*).) Thus, an amended complaint that relates back to the filing of a timely original complaint will avoid the bar of the statute of limitations. (*Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 934 (*Smeltzley*); *River's Side at Washington Square Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1241 (*River's Side*).) In order for the relation back doctrine to apply, the proposed amended complaint must rest on the same general set of facts, involve the same injury, and refer to the same instrumentality, as the original complaint. (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 244 (*Branick*); *Engel v. Pech* (2023) 95 Cal.App.5th 1227, 1236 (*Engel*).) The relation back doctrine may encompass adding a new plaintiff as long as the new plaintiff seeks to enforce the same right as the previously named plaintiff. (*Engel*, at pp. 1236–1237.) "An amended complaint relates back to the original complaint even if the plaintiff alleges a new legal theory or cause of action, so long as the amended complaint is based on the same general set of facts." (*Hutcheson*, at p. 940.)

### C. Analysis

There is no dispute that Champion was not a party to this matter until the SAC was filed in January 2024, which was beyond section 945.6, subdivision (a)(1)'s six-month limitations period for filing a lawsuit. The dispute is whether Champion has shown that the relation back doctrine applies. We conclude that Champion has done so.

Because Champion was first added to this case as a plaintiff through the SAC, we compare the allegations in the OC with the allegations in the SAC. The OC and the SAC both complain about damage done to the Property by the City and particularly complain

10.

that the City destroyed the Property's support walls without giving appellants sufficient time or information to stabilize the Property with support beams. Admittedly, there are some differences between the OC and the SAC. In particular, the SAC identifies Gilliam as the contractor who was responsible for the City's abatement efforts on the Property and alleges a claim for "waste" instead of a claim for "damages." However, adding further detail about how the City chose to go about its abatement efforts, and changing the name of a cause of action from "damages" to "waste," do not change the fact that both the OC and SAC rely on the City causing the support walls to be destroyed without affording appellants an adequate opportunity to stabilize the Property. (*Hutcheson*, *supra*, 74 Cal.App.5th at p. 940.) Accordingly, the claims in the OC and the claims in the SAC both rest on the same general set of facts. Further, the allegations in the SAC make no distinction between the rights and injuries of Perez and the rights and injuries of Champion. That is, the SAC indicates that Champion and Perez suffered the same injuries and are pursuing the same rights with respect to damage done to the Property. The FAC confirms this conclusion because the FAC and SAC both seek $1.3 million in monetary damages and the FAC did not include Champion as a party. The briefing also confirms this conclusion. Appellants' briefing clarifies that the rights and injuries pursued by Perez and Champion are identical because Perez and Champion view each other as essentially the same entity.

From the above, the same general set of facts (the Property's support beams were demolished at the City's direction), the same injury (property damage), and the same instrumentality (personnel who answered to or acted at the City's behest) are at issue in the OC and SAC. This satisfies the elements of the relation back doctrine. (*Branick*, *supra*, 39 Cal.4th at p. 244; *Engel*, *supra*, 95 Cal.App.5th at p. 1236; *Hutcheson*, *supra*, 74 Cal.App.5th at p. 940.) Therefore, the SAC relates back to the timely filed OC, (*Smeltzley*, *supra*, 18 Cal.3d at p. 934; *River's Side*, *supra*, 88 Cal.App.5th at p. 1241;

*Hutcheson*, at p. 940), and the trial court erred in finding that section 945.6 barred Champion's claims.

Even if we compared the TAC with the OC, our conclusion would not change. The TAC does not differentiate between the rights and injuries of either Perez or Champion with respect to the damage done to the Property, and the briefing confirms that Perez and Champion believe and contend their claims are identical and not separate. Further, although the TAC added additional detail that the City damaged the Property through the acts of Gilliam, the TAC and OC still complain that the City damaged the Property in the demolition/abatement process and failed to give appellants time to erect support beams. Therefore, the same general set of facts (the Property's support beams were demolished at the City's direction), the same injury (property damage), and the same instrumentality (personnel who somehow answer to or acted at the City's behest) are at issue in the OC and the TAC. (*Branick*, *supra*, 39 Cal.4th at p. 244; *Engel*, *supra*, 95 Cal.App.5th at p. 1236; *Hutcheson*, *supra*, 74 Cal.App.5th at p. 940.)

Additionally, case law has recognized that the general rule is to liberally allow amendments and apply the relation back doctrine when the original plaintiff lacks standing or authority to sue and the proposed amendment substitutes the real party in interest as the plaintiff. (See *Engel*, *supra*, 95 Cal.App.5th at pp. 1237-1238; *CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 287–288; *Cloud, supra,* 67 Cal.App.4th at pp. 1005–1007; *Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670, 1678.) As discussed above, the trial court correctly found that Perez lacked standing to bring claims for damage to the Property. Because Champion is the real party in interest as the owner of the Property, permitting Champion to continue to maintain the lawsuit as a plaintiff corrects Perez's lack of standing. Although a true substitution of parties did not occur because appellants attempted to pursue this lawsuit together, the corrective effect would remain the same because the claims for damage to the Property would continue to be pursued by the proper plaintiff and would be decided on the merits.

12.

(*Engel*, *supra*, 95 Cal.App.5th at p. 1238; *Garrison*, at p. 1678.)  Therefore, given Champion's standing and Perez's lack of standing, permitting Champion to continue the lawsuit without Perez is consistent with the liberal policy of substituting the real party in interest into a case.

In sum, because Champion has established that the relation back doctrine applies, the trial court erred by dismissing Champion for failing to comply with the section 945.6 six-month limitations period.

## III.    Sufficiency of the TAC's Allegations

### A.    Parties' Arguments

Appellants argue that the TAC's first cause of action alleges a vicarious liability negligence claim through section 815.4 for the damage done to the Property by Gilliam. Appellants contend that, under the peculiar risk doctrine, an employer may be liable for the negligent acts of an independent contractor if the independent contractor damages land.  Because the TAC alleges that the Property was damaged while Gilliam was undertaking a peculiar risk, appellants argue that the TAC is sufficient.

The City argues that the TAC is uncertain and ambiguous because the claims and damages are blended as one and it cannot be determined which plaintiffs are pursuing which claims.  The City also argues that the claims are barred by the GCA because they are outside the scope of Champion's GCA claim.  Specifically, the City contends that Gilliam and Gilliam's actions were not identified as a source of liability.  Finally, the City argues that the TAC is deficient because it never expressly alleges that Gilliam caused harm or damages to the Property.

### B.    Additional Background

The trial court's order did not make any express findings regarding the sufficiency of the TAC's allegations.  However, the order did state that the City's arguments were meritorious.  With respect to the sufficiency of the first cause of action under section 815.4, the City's demurrer argued the TAC did not establish that the City owed appellants

13.

a specific duty of care because there were no allegations that the actions of Gilliam caused anyone physical harm.

## C. Legal Standard

In reviewing a demurrer, appellate courts make a de novo determination of whether the complaint alleges facts that are sufficient to state a cause of action. (*Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193, 253 (*Martinez*); *Galeotti v. International Union of Operating Engineers Local No. 3* (2020) 48 Cal.App.5th 850, 856.) " ' " '[A] plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action.' " ' " (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550.) Less particularity is required when a matter is presumptively within the defendant's knowledge, such as the defendant's intent. (*Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587, 611.) The reviewing court gives " 'the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1041; *Martinez*, at p. 253.) The complaint's factual allegations are assumed to be true, as are the reasonable inferences that may be drawn from those facts. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 883 (*Miklosy*); *Galeotti*, at p. 856.) Complaints that allege ultimate facts rather than evidentiary facts are generally sufficient. (See *Skopp v. Weaver* (1976) 16 Cal.3d 432, 438–439; *Thomas*, *supra*, 97 Cal.App.5th at p. 610; *Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1019.) Appellate courts " 'treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.' " (*County of Santa Clara*, at p. 1041; *Martinez*, at p. 253.)

### D.    Analysis

#### 1.    Uncertainty

The City argues that the TAC is too uncertain because it blends Perez and Champion's claims and damages.  However, any uncertainty in this regard has been resolved as a result of this opinion.  Because Perez lacks standing, he is no longer a party to this action.  All claims and damages in the TAC belong only to Champion as the real party in interest.  Therefore, there is no longer uncertainty.

#### 2.    First Cause of Action – Negligence Through Section 815.4

Section 815.4 makes a public entity liable for the acts of its independent contractors to the same extent that a private person would be liable.  (§ 815.4; *Stanford v. Ontario* (1972) 6 Cal.3d 870, 879.)  One way that an employer may be liable for the negligent acts of an independent contractor is through the peculiar risk doctrine. (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 598; *Henderson Brothers Stores, Inc. v. Smiley* (1981) 120 Cal.App.3d 903, 910–911 (*Henderson Brothers*).)  "The peculiar risk [doctrine] allows lawsuits against those who hire contractors, if the work is 'likely to create … a peculiar risk of physical harm to others unless special precautions are taken[.]' " (*SeaBright*, at p. 598.)

In its demurrer, the City argued that the TAC failed to plead a negligence cause of action under section 815.4 because there were no allegations that anyone suffered physical harm.  We agree that there are no such allegations.  However, despite the peculiar risk doctrine's focus on "physical harm to others," the doctrine has been extended to encompass physical harm to land.  (*Henderson Brothers*, *supra*, 120 Cal.App.3d at p. 912, fn. 5.)  The TAC clearly alleges that the Property has suffered physical damage because the building's support walls were demolished as part of the City's abandoned abatement effort.  At this point in the proceedings, we are satisfied that the TAC adequately alleges physical harm to the Property.  (*Ibid.*)  Therefore, the fact that the TAC does not allege that a person suffered physical harm is of no consequence.

The City also argues that there are no allegations that Gilliam actually caused the damage complained of. It is true that there is not an express allegation that Gilliam caused any particular harm. However, we read the TAC as a whole and accept as true all facts alleged and the reasonable inferences that are derived from those facts. (*Miklosy*, *supra*, 44 Cal.4th at p. 883; *Martinez*, *supra*, 90 Cal.App.5th at p. 253.) Reading the TAC as a whole, it is alleged that Gilliam was engaged to demolish the Property in order to abate a public danger. It was *estimated* that this work would begin around September 25, and the Property's support walls were actually demolished very near that date on September 23. No other conduct towards or damage to the Property is identified, but it is alleged that Gilliam abandoned the project. The reasonable factual inference from these allegations is that Gilliam demolished the support walls on September 23 and then abandoned the project, leaving the Property in a worse condition than before the demolition. So viewing the TAC, we are satisfied that Gilliam is the party who actually demolished the support beams. Therefore, because of the reasonable inferences that flow from the facts alleged, the TAC sufficiently shows that Gilliam demolished the support beams, damaged the Property, and abandoned the abatement project.

The City argues that Gilliam was not identified in Champion's GCA claim to the City. We agree. However, a fatal variance exists between a lawsuit's complaint and a GCA claim when the complaint premises liability on an entirely different factual basis than that identified in the GCA claim. (*Hernandez v. City of Stockton* (2023) 90 Cal.App.5th 1222, 1232.) This often occurs when a complaint bases liability on acts committed at different times or by different people from the acts identified in a GCA claim. (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 447 (*Stockett*).) Such variances are fatal "because they subvert the purpose of the [GCA], which is intended to give the public entity an opportunity to investigate and evaluate its potential liability and, where appropriate, avoid litigation by settling meritorious claims." (*Hernandez*, at p. 1232.) Nevertheless, because a GCA

16.

claim need not identify each particular act or omission that is later proven to have caused the injury, a complaint may elaborate or add further detail to a claim so long as the claim is predicated on the same fundamental acts or omissions as those identified in the GCA claim. (*Stockett*, at p. 447.)

Here, the general facts identified in the GCA claim are that the City caused damage to the Property by destroying the support walls. This key fact has never changed. What has changed is that the TAC now provides further detail about how that damage occurred. That is, the TAC inferentially shows that the damage was done by Gilliam at the City's direction. Consequently, the TAC alleges that the City is vicariously liable for the damage to the Property through section 815.4. The TAC does not shift away from the key fact that the City was responsible for damaging the Property by causing the destruction of the support beams. Therefore, the fact that the TAC adds further elaboration and detail about the cause of the damage, but without premising liability on an entirely new set of facts, does not create a fatal variance. (*Stockett*, *supra*, 34 Cal.4th at p. 447; *White v. Superior Court* (1990) 225 Cal.App.3d 1505, 1511 ["Both plaintiff's complaint and her [GCA] claim were predicated on the same set fundamental set of acts – Officer Sanford's alleged mistreatment of plaintiff. The causes of action for negligent hiring, training, and retention and for failure to train, supervise, and discipline merely sought to show direct responsibility of San Francisco for Officer Sanford's conduct."].)

In sum, because the TAC sufficiently alleges a vicarious liability cause of action under section 815.4, the trial court erred in dismissing the first cause of action.[4]

[4] The City's responding brief points out that appellants did not make arguments in support of the TAC's second cause of action (which deals with municipal liability under section 815.2). Appellants did not raise the second cause of action in their opening brief or respond to the City's point in their reply brief. Moreover, during oral argument before us, the City again noted that appellants were making no arguments regarding the second cause of action, and appellants said nothing in response. Accordingly, we view this appeal as involving only the sufficiency of the TAC's first cause of action. We express no opinions regarding the TAC's second cause of action.

## **DISPOSITION**

The trial court's order dismissing Perez for lack of standing is affirmed.  The court's order dismissing Champion is reversed.  This matter is remanded to the Kern County Superior Court for further proceedings consistent with this order.  Champion is awarded its costs on appeal.


FAIN, J.*

WE CONCUR:


LEVY, Acting P. J.


DETJEN, J.

---

*Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.